**David Karl POWELL, Movant,**

v.

**Rebecca Lynn POWELL (Now Santana), Respondent.**

Supreme Court of Kentucky.

March 8, 1984.

David E. Melcher, Swinford & Sims, Cynthiana, for movant.

Irene P. Long, Bedford, for respondent.

## OPINION OF THE COURT

David and Rebecca Powell were divorced on June 17, 1977, and pursuant to agreement of the parties, Rebecca was given custody of their infant son, Jason, with visitation rights by David. Rebecca married Arturo Santana in November of 1980.

In January of 1981, David Powell filed a Motion for a Change of Custody which was heard on July 22, 1981. The trial court in its findings of facts stated:

6. That there was some drinking that went on in the home and upon one occasion Arturo Santana threatened to break the arms of his wife after they had married, unless she gave him the keys to the car. This apparently in the presence of the child.

7. That there was a person in the car with Arturo Santana by the name of Martinez and during the altercation Arturo Santana had with his wife, he attempted to intervene and they went outside and were arrested and were jailed for public drunkenness.

8. At some other time, Mrs. Santana (formerly Powell) was cited for drinking beer on a public highway, but apparently the charge was not tried.

10. That during the time that Jason was living with his mother a woman by the name of Jackie McKenzie came into the house of Mrs. Santana at the request of the said Eddie Rodriquez, to whom she was not married, and they lived together as husband and wife in that home with those children and with Mrs. Santana for a period of time.

12. Mrs. Santana had sex relations in the house where the children were at least twice with people other than her husband.

13. That at various times when the young man was allowed to visit with his father, he was found to be dirty, poorly clothed, hungry, and at one time they had run out of fuel and had to go to the grandmother's house, all of them, including Mrs. Santana's children, for a couple of weeks.

14. That having listened to all of these witnesses for an entire day, and taking into consideration every known fact, the Court finds that the overall influence in the home of the mother is harmful for a child of this young man's age and that said influence endangers seriously his physical, mental, and particularly his moral and emotional health, and that it is in the best interest of said child to be transferred to the custody of his father, the Petitioner in this case, David K. Powell.

There were also findings of fact that the new husband, the babysitter and most of the people who visited the home were of Puerto Rican descent.

The trial court ordered the custody of the son transferred to Mr. Powell, and the mother given reasonable visitation rights.

Mrs. Santana appealed, and the Court of Appeals stated that their power to set aside the findings of the trial court was limited by the "clearly erroneous" rule in CR 52.-01. But the court found that the trial court made no findings of fact as mandated by KRS 403.270 and 403.340(2). They reviewed the facts of the case by the standards set forth in the statutes and reversed the judgment of the trial court directing it to deny the motion of a change of custody.

KRS 403.340 sets forth the standard to be used by the trial court in modifying a custody decree. It states in pertinent part:

(2) ... [t]he court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:

. . . .

(c) The child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him.

The findings of fact listed above satisfied the requirements placed upon the trial court in modifying a prior custody decree.

 We are presented with the issue of whether the trial court's findings are clearly erroneous. CR 52.01. The Court of Appeals admitted the validity of the trial court's findings of fact numbered 6, 7, 8 and 13, but did not find them significant in making an award of custody. The court went on to state that the findings numbered 10 and 12 were irrelevant because there was no evidence that the conduct was viewed by or did affect the child. As stated in *Krug v. Krug*, Ky., 647 S.W.2d 790 (1983), the standard to be used in consideration of misconduct on the part of the custodian is not whether it has affected the child but whether it is likely to adversely affect the child. "If such a determination is made, the trial court may then consider the potential adverse effect of such misconduct as it relates to the best interests of the child." *Krug, Id.*, at 793. The trial court was correct to consider sexual mis-

**314**

conduct of the mother and her friends in making a determination as to the custody of the child.

■ The crucial factor in the present case seems to be the perception by the Court of Appeals that the trial court changed the custody of the child because the mother married a Puerto Rican and had numerous Puerto Rican friends. Although race is obviously no reason to modify a custody decree, on review the court cannot assume that race is the ground for modification where other relevant evidence is present which would support the trial court's findings.

■ The findings of fact previously enumerated in this case support a conclusion that the custody modification was not clearly erroneous. The Court of Appeals merely substituted its judgment for that of the trial court's.

The decision of the Court of Appeals is reversed and the judgment of the Pendleton Circuit Court is affirmed.

All concur.