David C. CHALUPA, Appellant,

v.

Pamela Kay CHALUPA, Appellee.

and

David C. CHALUPA, Appellant,

v.

Pamela Kay CHALUPA and Alvin Delano Bailey, Appellees.

Nos. 90–CA–001145–MR, 92–CA–000165–MR.

Court of Appeals of Kentucky.

May 1, 1992.

Thomas W. Lavender, Ashland, for appellant.

James E. Armstrong, Greenup, for appellee, Pamela Kay Chalupa.

Jeffrey D. Hensley, Flatwoods, for appellee, Alvin Delano Bailey.

Before HUDDLESTON, SCHRODER and STUMBO, JJ.

SCHRODER, Judge.

This appeal arises out of two consolidated cases stemming from one marital dissolution proceeding.

Pamela Chalupa and David Chalupa were married on May 14, 1985, in Boyd County, and separated on September 28, 1989. The parties had one child (Jeffrey) born as a result of this marriage and the appellee, Pamela, had a subsequent child, which was not fathered by the appellant, David Chalupa, but was born prior to the circuit court's final disposition.

The appellant/husband contends that the trial court erred in: failing to order a psychological examination of the appellee, Pamela Chalupa, before awarding her custody; failing to award joint custody; its division of marital debts; and in failing to alternate the dependency exemption for the couple's child.

KRS 403.290(2) does allow a court to order psychological tests of the child, as well as the parents, in order to assist in making the custody determination. The statute is permissive, not mandatory, and the professional's conclusions are merely expert testimony, or evidence to be considered by the courts (*see Brown v. Brown*, Ky., 510 S.W.2d 14 (1974)), and not dictates. *See* KRS 403.270; *Atwood v. Atwood*, Ky., 550 S.W.2d 465 (1976); and *Poe v. Poe*, Ky.App., 711 S.W.2d 849 (1986). In reviewing the transcript of evidence, we cannot say the trial court erred in not ordering a psychological examination of the appellee. The evidence of the appellee's sexual misconduct, like the appellant's alcohol abuse, is not relevant *unless* the misconduct can be shown to affect, or is likely to affect, the child adversely, such that it relates to the best interests of the child. *Krug v. Krug*, Ky., 647 S.W.2d 790 (1983), and *Powell v. Powell*, Ky., 665 S.W.2d 312 (1984). The evidence in this case was of the misconduct, not the effect on the child.

The second issue appellant raises concerns the trial court's finding that joint custody was unworkable where both parties were found to be responsible. The

trial court held that it was in the best interest of the child to keep the child with the appellee/mother, noting: "The factor that weighs heavily with this court is the factor of the father's absence from home for four days out of each week and on two other days that he does not get home until 8:00 or 9:00 p.m. at night because of his job."

There may be a misunderstanding here of terminology because even in joint custody cases, there is a primary custodian and the issue is not where the child stays. Under KRS 403.270(3), effective July 15, 1980, the court is allowed to grant joint custody if it is in the best interest of the child. Joint custody recognizes that, although one parent may have primary physical possession of the child, both parents share the decision making in major areas concerning the child's upbringing, such as which school to attend, etc., a role traditionally enjoyed by both parents during the marriage. *Burchell v. Burchell,* Ky.App., 684 S.W.2d 296 (1984). Joint custody is also a natural progression of our no fault divorce concept (KRS 403.140(c)), recognizing that both parties may be fit parents but not compatible to be married to each other. A divorce from a spouse is not a divorce from their children, nor should custody decisions be used as a punishment. Joint custody can benefit the children, the divorced parents, and society in general by having both parents involved in the children's upbringing. *Burchell, supra.* KRS 403.-270 provides that a court may grant joint custody if it is in the child's best interest. The difficult and delicate nature of deciding what is in the best interest of the child leads this Court to interpret the child's best interest as requiring a trial court to *consider* joint custody first, before the more traumatic sole custody. In finding a preference for joint custody is in the best interest of the child, even in a bitter divorce, the court is encouraging the parents to cooperate with each other and to stay on their best behavior. Joint custody can be modified if a party is acting in bad faith or is uncooperative. The trial court at any time can review joint custody and if a party is being unreasonable, modify the custody to sole custody in favor of the reasonable parent. Surely, with the stakes so high, there would be more cooperation which leads to the child's best interest, the parents' best interest, fewer court appearances and judicial economy. Starting out with sole custody would deprive one parent of the vital input and cannot be changed to joint custody unless there was a finding that the child's present environment endangers seriously his physical, mental, moral, or emotional health. KRS 403.340. *See Lynch v. Lynch,* Ky.App., 737 S.W.2d 184 (1987).

The *Hardin v. Hardin,* Ky.App., 711 S.W.2d 863 (1986) case recognized the benefits of joint custody even though it found on the facts that when the parents are not sufficiently understanding and mature enough to cooperate in such arrangement, the case should go back to the trial court and a review done to determine which parent would be best suited to be custodian based upon the factors in KRS 403.270. *See also Erdman v. Clements,* Ky.App., 780 S.W.2d 635 (1989) which holds the subsequent hearing is to be *de novo,* as if no prior custody determination had been made.

This Court cannot say that the trial court erred in the division of marital debts or the allocation of the dependency exemption. Under CR 52.01, the Appellate Court's review of the trial court's decision is limited to reversing only clearly erroneous findings, keeping in mind that the trial court had opportunity to hear evidence and observe witnesses so as to judge credibility. *Bealert v. Mitchell,* Ky.App., 585 S.W.2d 417 (1979). In the case sub judice, the trial court heard evidence and ruled accordingly. Disagreeing with the findings is not sufficient to find the findings as clearly erroneous. Even if both parties agreed as to the allocation of the dependency exemption, the trial court is required to review proposed settlements, and all agreements concerning support are subject to court approval. KRS 403.180.

The other issues contained in the statement of appeal were not briefed and will not be addressed here.

For the reasons set forth above, the decision of the trial court is affirmed except as to the issue on custody. As to the custody issue, the court is reversed and the issue of joint versus sole custody is remanded to the trial court for further deliberation consistent with this opinion.

STUMBO, J., concurs.

HUDDLESTON, J., concurs in part and dissents in part.

HUDDLESTON, Judge, dissenting.

I dissent from that portion of the majority opinion which remands this case to the trial court with directions to award these parties joint custody of their son, Jeffrey. I believe that the majority has effectively deprived the trial court of the discretion with which it is vested by KRS 403.270.

I repeat here what I said in my dissent in *Squires v. Squires*, Ky.App., 1992 WL 57099 (decided March 27, 1992):

> In considering a joint custody arrangement, it is imperative that the court determine whether the parties possess the maturity necessary to suppress their enmity toward one another when addressing issues affecting their child. Without an atmosphere allowing a cooperative exchange of ideas, the parties will tend to inflict their personal animosities on the child. The detrimental and de-stabilizing effect of a joint custodial arrangement between uncooperative parents is apparent.

> The trial court must necessarily examine all relevant factors before making a determination that joint custody serves the best interests of the child. Cooperation of the parties and logistical fea-

sibility are only two factors to be considered in arriving at the appropriate custodial arrangement. The court must also consider the factors contained in KRS 403.270 [1].

I agree that:

> Since questions involving custody of children ... are always open to modification in the trial court, we are reluctant to modify a decision of a chancellor in such matters except where his determinations impress us with being obviously unjust and erroneous.

*Heltsley v. Heltsley*, Ky., 242 S.W.2d 973, 974 (1951).

The trial court has broad discretion in determining the best interests of the child in custody matters. CR 52.01 requires that findings of fact not be set aside unless clearly erroneous inasmuch as the trial judge has had the opportunity to evaluate the evidence firsthand and assess the creditability of the witnesses. *McNamee v. McNamee*, Ky., 432 S.W.2d 816 (1968).

Because I believe that the trial judge's decision as to custody is amply supported by the evidence of record and does not, therefore, represent an abuse of discretion, I would affirm the decree from which this appeal is prosecuted in its entirety.

---

1. KRS 403.270 provides:

(1) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community; and

(e) The mental and physical health of all individuals involved.

(2) The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child. The abandonment of the family residence by a custodial party shall not be considered where said party was physically harmed or was seriously threatened with physical harm by his or her spouse, when such harm or threat of harm was causally related to the abandonment.