**Jill Marie JACOBS, Appellant,**

v.

**Irwin Alexander EDELSTEIN, Appellee.**

**No. 97–CA–297–MR.**

Court of Appeals of Kentucky.

Jan. 23, 1998.

---

John R. Wilson, Denise M. Helline, Louisville, for Appellant.

Houston M. Oppenheimer, Christy J. Adams, Louisville, for Appellee.

Before GUDGEL, C.J., and
BUCKINGHAM and HUDDLESTON, JJ.

## OPINION

GUDGEL, Chief Judge:

This is an appeal from an order entered by the Jefferson Circuit Court modifying a joint custody decree and awarding sole custody to appellee. For the reasons stated hereafter, we vacate and remand.

The parties are the parents of a daughter who was born in August 1990. They ceased cohabiting in April 1991, and a custody action was filed thereafter. Sole custody was awarded to appellant in 1992, but appellee repeatedly sought to modify the custody decree on the grounds that appellant is an alcoholic and is unable or unfit to properly care for the child. Appellant, on the other hand, adduced evidence to show that appellee had followed, threatened, and harassed her.

Eventually, appellee was awarded temporary custody of the child after appellant was charged with public intoxication in the child's presence.

■ In October 1993, the parties entered into an agreed judgment regarding custody. Pursuant to the agreement, the parties were to share joint custody and to have equal visitation. Each was to provide a primary residence for the child. The agreement further stated that "neither parent should abuse drugs and/or drink any alcohol," that both would "continue their Alcohol and Psychological Treatment Program," and that the "[f]ailure to continue treatment and failure to maintain sobriety will result in loss of unsupervised visitation."

Eleven months later, appellee requested the court to terminate appellant's unsupervised visitation rights because she had consumed alcohol several times subsequent to the entry of the agreed order. In response to this request, the court ordered appellant's visitation with the child to be directly supervised by appellant's mother, and directed that the child should neither be present in the home when alcohol was consumed, nor be in the company of anyone who was under the influence of alcohol. These court-imposed supervised visitation restrictions were terminated in April 1995.

In March 1996, appellee again filed a motion to modify custody, alleging that appellant had continued to use alcohol in violation of the court's previous orders. Although appellant admitted that she had consumed alcohol on three occasions in early 1996, she denied that she drank it in the child's presence or that she became intoxicated. While appellee's motion to modify was pending, appellant entered and completed an in-patient alcohol rehabilitation program.

Finally, in January 1997, the court granted appellee's pending motion and awarded him sole custody. In its order, the court expressed concern both about appellant's failure to abstain from consuming alcohol despite being repeatedly warned and ordered to do so, and about appellee's continued demonstration of "behaviors which exhibit his continuing lack of responsibility in handling

his personal finances, and his continuing attempts to ruin Dr. Jacobs' career." However, the court also noted that after evaluating the child, Dr. Lee Epstein described her as "a very bright, stable, impressive, well adjusted child who is magnificent in her interpersonal relationships with her parents and peers," and did not recommend changing the visitation schedule. Additionally, the court found that

the record is replete with the understanding of the parties as to Respondent's obligation to refrain from the use of alcohol when in the company of this child and the Court's admonitions against Respondent exposing this child to alcohol use by Respondent or others. These unusual precautions were necessary because Respondent had exposed the child to serious risk by her action on June 13, 1993. Most parents can be trusted to use alcohol in a mature, responsible manner when children are present. *Respondent had proven her inability to do so.*

Although there is no evidence that she, or anyone else, became intoxicated and again placed this child at risk in March, 1996, *her action in returning to the use of alcohol* when exercising parental control of the child *constitutes a bad faith refusal to cooperate with the most important requirement of this joint custody arrangement,* and is sufficient to reopen the custody issue for a de novo determination under KRS 403.270.

Dr. Lee Epstein's testimony shows that this child has, miraculously, fared well under the joint custody and equal time provisions of the agreed order, in spite of the continuing parental conflict evidenced by these proceedings. *Thus, the Court's first inclination, to limit or require supervision of the Respondent's time with the child,* so as to reduce the risk of future alcohol abuse and danger to the child, *does not appear to be in Alexandria's best interest.*

*Alexandria* is devoted to both her parents and *has flourished under the current schedule....*

....

*Had Mr. Edelstein's behavior been different, this Court would have no misgiv-*

*ings about modifying custody and awarding to him, sole custody.* He has, however, remained financially irresponsible, has engaged in a course of conduct obviously aimed at harming the Respondent professionally, and has used his volunteer position with MADD for his own personal purposes under the guise of volunteer work for that group. Mr. Edelstein's failure to recognize his actions as deviations from acceptable behavior is troubling to the Court. *One of the main concerns as to awards of sole custody is the power imbalance that is thereby created. Mr. Edelstein has shown by his previous behavior a tendency toward abusing his authority or power.* He has continued in counselling ... and *hopefully he will be able to carry out his responsibilities as a sole custodian for this child without damaging the close relationship between the child and the Respondent.* (Emphasis added.)

The court ordered the parties to continue sharing equal time with the child according to the visitation schedule set forth in the earlier agreed judgment. This appeal followed.

■ We stated in *Mennemeyer v. Mennemeyer,* Ky.App., 887 S.W.2d 555, 558 (1994), that

in nonconsensual modification situations ... the trial court may intervene to modify a previous joint custody award only if the court first finds that there has been an inability or bad faith refusal of one or both parties to cooperate. Any court-ordered modification must then be made in light of the best interest of the children and based upon the factors which are enumerated in KRS 403.270.

This judicial standard was reiterated in *Stinnett v. Stinnett,* Ky.App., 915 S.W.2d 323, 324 (1996), wherein we noted that

*Mennemeyer*'s requirement of "an inability or bad faith refusal of one or both parties to cooperate" must be read in conjunction with our supreme court's definition of "cooperation" as it applies to joint custody situations. In *Squires v. Squires,* Ky., 854 S.W.2d 765, 769 (1993), and as noted in *Mennemeyer, supra* at 557, the

court defined such cooperation as being a "willingness to rationally participate in decisions affecting the upbringing of the child."

Once a trial court determines that one or both joint custodians cannot, or in bad faith will not cooperate, in the sense that they are unable to *"rationally* participate in decisions concerning their child's upbringing," the court should make a de novo determination as to custody in light of the child's best interest and in accordance with the factors enumerated in KRS 403.270. *Stinnett, id.; Mennemeyer, supra* at 558.

■ Apparently, the *Mennemeyer* and *Stinnett* opinions have been interpreted by some members of the bar and the judiciary as prohibiting a trial court from examining any issue relating to joint custody unless a *Mennemeyer* finding is first made, even if the issue is unrelated to who has custody or primary physical possession of a child. Further, the opinions have been interpreted as prohibiting a trial court from continuing joint custody once the court makes a finding that the *Mennemeyer* threshold requirement for modifying joint custody has been met. For example, it was recently stated that:

> The *Mennemeyer* standard means that parties with joint custody cannot use the court as a last resort decision-maker without significant risk.... Filing a motion seems more likely to be the last act of negotiation rather than the first. The act of filing the motion is likely to mean that the parties are at an impasse. However, *the Mennemeyer standard* requires more because it *demands that the filing party prove that joint custody is no longer possible.* Thus, *Mennemeyer* appears to impose an all-or-nothing rule on joint custodians, a result which, though protective of the judicial system, is not necessarily in the child's best interest. (Footnote omitted.) (Emphasis added.)

16 Louise E. Graham & James E. Keller, *Kentucky Practice* § 21.31 (1997).

Contrary to the foregoing interpretation, we believe that *Mennemeyer* was intended only to establish a threshold procedural requirement, regarding the existence of an inability or bad faith refusal of the parties to cooperate, which must be met before a trial court may consider whether to modify an award of joint custody. Similar to the threshold procedural requirement set out in KRS 403.340(1) regarding the modification of a sole custody decree within two years of its inception, the *Mennemeyer* threshold requirement simply is a first step which must be satisfied before a party may proceed in his or her attempt to modify a joint custody decree. Once this threshold requirement is met, the trial court may then make a de novo determination of custody in accordance with the child's best interest, utilizing the factors set forth in KRS 403.270.

■ *Mennemeyer* does not hold, and should not be interpreted as holding, that the threshold procedural requirement must be met before a trial court may address issues, other than those involving the nonvoluntary modification of custody or primary physical possession arrangements, which may arise in the context of joint custody, such as disagreements concerning a child's educational or religious upbringing. Similarly, *Mennemeyer* does not hold, and should not be interpreted as holding, that whenever it is shown that joint custodians cannot or in bad faith will not cooperate in regard to some particular issue, joint custody cannot continue regardless of whether it would be in the child's best interest. Just as a trial court clearly need not modify a sole custody decree whenever the KRS 403.340(1) threshold requirement is met, a trial court need not modify a joint custody decree whenever the *Mennemeyer* threshold procedural requirement is met if, after a hearing, the court determines that continuation of the joint custody decree would be in the child's best interest.

■ Here, appellant argues that the trial court first erred by finding that the *Mennemeyer* threshold procedural requirement was satisfied because her attempts to recover from alcoholism necessarily included incidents of relapse in the use of alcohol. She urges that because these incidents were involuntary and attributable to her disease, they were not evidence of a bad faith refusal to cooperate. However, it appears to us that by finding both that appellant was unable to

refrain from the responsible use of alcohol in the child's presence, and that her continued use of alcohol constituted a bad faith refusal to cooperate with the terms of the joint custody decree, the court in essence found that both of the two alternative grounds for satisfying the *Mennemeyer* threshold requirement for modification were satisfied. In other words, regardless of whether one considers appellant's relapses in the use of alcohol to be within or beyond her control as an alcoholic, the evidence nevertheless supports a finding that she either was unable, or in bad faith was unwilling, to cooperate with the restrictions on the use of alcohol imposed by the agreed joint custody order. Hence, we conclude that the trial court did not err by finding that the *Mennemeyer* threshold requirement for the modification of joint custody was met.

It follows, therefore, that the trial court was vested with the authority to conduct a hearing and to consider the custody issue de novo as if there had been no prior custody award. *See* KRS 403.270. Here, evidence was adduced and the court found that the parties' child was faring extremely well under the existing joint custody arrangement, that it would not be in the child's best interest either to change the current visitation schedule or to require that visitation be supervised, and that even appellee testified that the parties could agree in making decisions regarding the child. Further, the court clearly described its numerous concerns about each party, as well as its misgivings about awarding sole custody to appellee. However, not only does the court's order contain no finding that it would be in the child's best interest to award sole custody in lieu of joint custody, but in fact it seems clear that the court awarded sole custody to appellee because it believed that once the *Mennemeyer* threshold requirement was met, it was precluded from continuing the award of joint custody. If this indeed was the court's interpretation of *Mennemeyer*, we must conclude for the reasons noted earlier that in this respect the court erred. Hence, the court's decree must be vacated and remanded with directions to make a determination, based upon the evidence previously adduced, as to whether the child's best interest would be served by a continuation of joint custody or by an award of sole custody to appellee.

For the reasons stated, the court's order is vacated and remanded for further proceedings consistent with the views expressed in this opinion.

All concur.