Steven **BRIGGS**, Appellant,

v.

Valerie **CLEMONS**, Appellee.

No. **1998–CA–000511–MR.**

Court of Appeals of Kentucky.

Feb. 26, 1999.

Discretionary Review Denied
by Supreme Court Nov. 10, 1999.

Armand I. Judah, Louisville, Kentucky, for Appellant.

Steven J. Kriegshaber, Louisville, Kentucky, for Appellee.

Before COMBS, DYCHE, and SCHRODER, Judges.

## OPINION

SCHRODER, Judge.

This is an appeal from an order denying appellant's motion for a modification of joint custody to change primary residence of custody from the mother who resides in Georgia to appellant who resides in Kentucky. Appellant argues that the trial court erred in summarily denying appellant's motion without an evidentiary hearing. Upon review of the record and the applicable law, we adjudge that the court properly denied the motion and, thus, affirm.

Alec Matthew Clemons was born to the parties, who were never married, on October 15, 1993. Thereafter, the mother, Valerie Clemons, appellee herein, filed a paternity action against Steven Briggs, appellant herein. Blood tests revealed that Steven was, indeed, the father of the child. After paternity was established, the parties litigated visitation and child support. On December 4, 1995, the court awarded joint custody and provided equal division of time with the child.

Subsequently, in March 1996, Valerie remarried her former husband, Gerald Willhite, a resident of Georgia. Valerie then filed a motion seeking to remove Alec to Georgia, which Steven contested. On February 13, 1997, the trial court entered an order granting Valerie's motion to remove Alec to Georgia, which was later affirmed by this Court. After learning some months later that Valerie and Gerald Willhite were getting divorced again, Steven filed the motion herein seeking emergency return and possession of Alec on July 22, 1997. In this motion, Steven alleged that Alec's mental, moral, emotional, and physical well-being were endangered because of Valerie's instability. Specifically, Steven alleged in an affidavit that Valerie had been spanking the child excessively. As a result of the allegations in the motion, the court ordered the child to remain in Kentucky pending an emergency evaluation by a clinical psychologist and a social worker. On August 13, 1997, Steven filed another motion seeking a change in Alec's primary residence. In this motion, he maintained that the child should reside in Kentucky because the child had no other ties to Georgia since Valerie and Mr. Willhite were divorcing. After the psychological evaluations were conducted and the deposition of Gerald Willhite was taken, the court set the matter for a hearing. On the date of the hearing, Valerie moved to dismiss the proceeding. The court granted the motion, determining that Steven failed to meet the threshold requirement for modifying joint custody under *Mennemeyer v. Mennemeyer*, Ky.App., 887 S.W.2d 555 (1994), by proving that the parties have been unable to cooperate or have, in bad faith, refused to cooperate in making decisions concerning Alec's upbringing. As for Steven's assertions that Valerie had been abusive toward Alec, the court adopted the conclusion of the court-appointed psychologist that there was no

conclusive proof that Valerie had abused Alec, and that the situation that may have caused Valerie to lash out has ended. Hence, the court ruled that Valerie was allowed to· keep Alec in Georgia. This appeal by Steven followed.

■ Steven's sole argument is that the trial court erred in summarily denying his motion without an evidentiary hearing. Steven maintains that the court interpreted the holding in *Mennemeyer*, 887 S.W.2d at 555 too narrowly in denying his motion because he failed to meet the threshold requirement to modify joint custody set out in *Mennemeyer*. From our reading of *Mennemeyer* and *Stinnett v. Stinnett*, Ky. App., 915 S.W.2d 323 (1996), this Court was unequivocal in its holding that a party must meet the threshold requirement of proving that there was an inability or bad faith refusal to cooperate by the other party in order to modify joint custody. In the recent case of *Jacobs v. Edelstein*, Ky.App., 959 S.W.2d 781 (1998), this Court slightly narrowed its holding in *Mennemeyer*, holding that the threshold requirement does not have to be met to address certain issues related to joint custody. However, the Court in *Jacobs* made it clear that the threshold requirement must still be met before the court can modify the basic ruling of joint custody or primary physical possession of the child.

Steven argues that it is inconceivable that the above threshold requirement would be the only reason the court could modify joint custody. In particular, Steven points to his allegations regarding Valerie's mental instability as an example of a situation where the parties may have been cooperating with one another yet one parent's fitness as a parent is called into question.

■ For purposes of the threshold requirement, "cooperation" has been defined as a "willingness to rationally participate in decisions affecting the upbringing of the child." *Mennemeyer*, 887 S.W.2d at 557 (quoting *Squires v. Squires*, Ky., 854 S.W.2d 765, 769 (1993)). In *Jacobs*, 959 S.W.2d at 783, it was adjudged that the mother's refusal to stop drinking alcohol, which was a condition of joint custody, constituted a bad faith refusal to cooperate, thereby meeting the threshold requirement necessary to reopen the custody issue for a de novo determination under KRS 403.270. Thus, conduct on the part of a party to joint custody that evidences an unwillingness to rationally make decisions regarding the child, whether it is an actual showing that the parents have been uncooperative with one another or some other type of conduct, can be sufficient to meet the threshold requirement. Further, it was hinted in *Mennemeyer*, 887 S.W.2d at 557, that if a party to joint custody can meet the higher burden of proving grounds sufficient to modify an order of sole custody under KRS 403.340, there were per se sufficient grounds to modify joint custody. Thus, if a party to joint custody can prove that the child's present environment in the custody of the other parent endangers his physical, mental, or emotional health, that is sufficient to likewise modify joint custody, even if the evidence establishes that the parties have been cooperating in good faith with one another. Although there is much emphasis on the cooperation of the parents in a joint custody arrangement, we cannot forget the well-being of the child in the process. We believe our ruling is necessary to fill the gap in the law as it applies to those situations where the parents in a joint custody arrangement are cooperating with each other, but the child is nevertheless endangered by his present environment with one of the parents. The other parent must have some legal recourse in order to protect the child. That being said, we move on to the issue as it applies to the case at hand.

In reviewing the report from the psychological evaluations of the parties involved, the affidavits in the record, and the deposition of Gerald Willhite, we see no evidence that Valerie had ever abused Alec or that his well-being was endangered in

her custody. Willhite testified that Valerie was very protective of Alec and that she occasionally spanked him on the buttocks or slapped him on the hand. In our view, this does not rise to the level of endangering the child's physical, mental, moral, or emotional health (KRS 403.340(2)(c)), nor does it demonstrate an unwillingness to rationally make decisions regarding the child. As to the actual cooperation between the parties, we likewise agree with the trial court that the allegations in Steven's affidavit did not demonstrate Valerie's inability or bad faith refusal to cooperate in making decisions regarding the child's upbringing. Accordingly, we agree with the trial court that the appellant did not meet the threshold requirement necessary to modify joint custody.

For the reasons stated above, the judgment of the Jefferson Family Court is affirmed.

ALL CONCUR.