Robert L. SCHEER, Appellant,

v.

Donna J. ZEIGLER, f/k/a Donna
J. Scheer, Appellee.

No. 1998–CA–002017–MR.

Court of Appeals of Kentucky.

June 23, 2000.

Burke B. Terrell, Paducah, for Appellant.

Robert C. Manchester, Paducah, for Appellee.

Before: The Full Court Sitting En Banc.

**BUCKINGHAM, Judge.**

Robert L. Scheer appeals from an order of the McCracken Circuit Court denying his motion to modify joint custody due to his failure to meet the requirements of *Mennemeyer v. Mennemeyer,* Ky. App., 887 S.W.2d 555 (1994). Because we believe that *Mennemeyer* and *Benassi v. Havens,* Ky.App., 710 S.W.2d 867 (1986), should be overruled, we reverse and remand.

Robert Scheer and Donna J. Zeigler, f/k/a Donna J. Scheer, were married in 1989. In February 1996, the trial court entered a decree of dissolution dissolving their marriage. The parties were awarded joint custody of their son, who was five years old at the time. Donna was designated as the child's primary caretaker, although the child apparently spent more time in the residence of his father than in the residence of his mother.[1]

In late 1997, Donna remarried and planned to move to Atlanta, Georgia, with her new husband. Robert subsequently filed an action in the trial court seeking custody or, alternatively, an order making him the primary caretaker of the child.[2] The matter was referred to a domestic relations commissioner ("DRC") who found that the parties were unable to cooperate with the joint custody order, that Robert had therefore met his burden under *Mennemeyer,*[3] that the child was integrated into Robert's home, that the best interest of the child was that he continue to reside primarily in Robert's home, and that Robert and Donna should continue to share joint custody but with Robert being the primary residential custodian. After re-

---

1. The domestic relations commissioner found that the child spent four nights each week with his father and three nights each week with his mother. Although the commissioner found that "[t]he child spent greater aggregate hours with his father than with his mother," the commissioner also noted that "[t]o her credit, Donna was generous with visitation because she felt it was important for [the child] to have a close relationship with his father, Robert."

2. The motion was filed more than two years after the entry of the decree. *See* Kentucky Revised Statute (KRS) 403.340(1).

3. The *Mennemeyer* court held that "in nonconsensual modification situations involving joint custody, ... the trial court may intervene to modify a previous joint custody award only if the court first finds that there has been an inability or bad faith refusal of one or both parties to cooperate." 887 S.W.2d at 558.

viewing Donna's exceptions to the DRC's report, however, the trial court determined that there was not an inability of the parties to cooperate concerning their son's welfare and denied Robert's motion to modify custody based upon *Mennemeyer*.

While this case was pending, this court rendered an opinion in *Briggs v. Clemons*, Ky.App., 3 S.W.3d 760 (1999),[4] which held that "if a party to joint custody can prove that the child's present environment in the custody of the other parent endangers his physical, mental, or emotional health, that is sufficient to likewise modify joint custody, even if the evidence establishes that the parties have been cooperating in good faith with one another." *Id.* at 762. The court surmised that *Mennemeyer* "hinted ... that if a party to joint custody can meet the higher burden of proving grounds sufficient to modify an order of sole custody under KRS 403.340, there were per se sufficient grounds to modify joint custody." *Id.*

Kentucky Revised Statute (KRS) 403.340(2) provides in pertinent part that

the court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian appointed pursuant to the prior decree unless:

(a) The custodian agrees to the modification;

(b) **The child has been integrated into the family of the petitioner with consent of the custodian;** or

(c) The child's present environment endangers seriously his physical, mental,

moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him; or

(d) The custodian has placed the child with a de facto custodian.

KRS 403.340(2) (emphasis added). Although the DRC made a finding which would have constituted a sufficient ground for modifying custody under the statute (integration into Robert's home with Donna's consent), the trial court nevertheless denied the motion because Robert had failed to prove that the parties were unable to cooperate in the joint custody arrangement as required by *Mennemeyer*. Having examined Kentucky's history of joint custody, including the statutes and appellate court decisions through *Briggs*, we determine that *Benassi* and *Mennemeyer* should be overruled and this matter remanded to the trial court.

In order to analyze this issue, it is necessary to outline the history of joint custody in Kentucky and to explain the origin of *Mennemeyer* and its progeny. In 1980, the General Assembly enacted KRS 403.270(3) which gave trial courts the right to grant joint custody to a child's parents "if it is in the best interest of the child." KRS 403.270(3).[5] In *Burchell v. Burchell*, Ky.App., 684 S.W.2d 296 (1984), one of the first cases in which joint custody was discussed to any degree by a Kentucky appellate court, this court defined joint custody as "an arrangement whereby both parents share the decision making in major areas concerning their child's upbringing, a role traditionally enjoyed by both parents during the marriage, but which is usually reposed solely in one parent following dissolution." *Id.* at 299.

In 1986, the Kentucky Supreme Court rendered an opinion in *Carnes v. Carnes*, Ky., 704 S.W.2d 207 (1986), a case involving facts which are similar to those

---

**4.** After *Briggs* was rendered by this court, we entered an order holding this case in abeyance pending finality in *Briggs*.

**5.** This section is now embodied in KRS 403.270(5).

in this case. In *Carnes*, the trial court awarded joint custody to the mother and father of two infant children. The mother was granted the actual physical custody of the children for the greater part of the time, but when she encountered personal difficulties, she allowed the children to live with their father. After the children resided with their father for approximately six months, he moved the trial court to modify the joint custody decree and grant him sole custody. Pursuant to KRS 403 .340(2)(b), the trial court granted sole custody to the father based on a finding that the children had become integrated into his family unit with the consent and permission of the mother. Although the court of appeals reversed the case, the supreme court reversed the court of appeals and upheld the trial court's modification of joint custody.

The facts in *Carnes* are similar to the facts in this case in that, in each case, a father sought to modify joint custody on the statutory grounds that the child had become integrated into his home. *Carnes* is significant because it recognizes a modification of a joint custody arrangement under KRS 403.340, the general custody modification statute. Furthermore, *Carnes* has precedential value, as it has never been overruled. *See* Rule of the Supreme Court (SCR) 1.030(8)(a).[6]

One month after the supreme court rendered its decision in *Carnes*, this court rendered *Benassi v. Havens* which held that "joint custody is no award at all when considering modification of the [joint custody] arrangement" and that "when joint custody is awarded ... and the parties subsequently disagree, neither KRS 403.340 nor KRS 403.350 applies." *Benassi*, 710 S.W.2d at 869. The *Benassi* court further held that in such situations "modi-

fication should be made anew under KRS 403.270 as if there had been no prior custody determination." *Id.* Therefore, the court of appeals held in *Benassi* that KRS 403.340 did not apply to joint custody modifications even though the supreme court had recognized the statute's applicability to such modifications one month earlier in *Carnes*.

Then, with *Hardin v. Hardin*, Ky.App., 711 S.W.2d 863 (1986), this court began developing a line of cases which expressed its view that the cooperation of the parties is essential to joint custody arrangements. The *Hardin* court stated that "[i]t would seem obvious that joint custody cannot be in the best interests of the children where the parents are not sufficiently understanding and mature enough to cooperate in such an arrangement." *Id.* at 865.

Six years later, in *Chalupa v. Chalupa*, Ky.App., 830 S.W.2d 391 (1992), this court established for the first time, without citing statutory authority, that "[j]oint custody can be modified if a party is acting in bad faith or is uncooperative."[7] *Id.* at 393. The *Chalupa* court also stated that "[t]he trial court at any time can review joint custody and if a party is being unreasonable, modify the custody to sole custody in favor of the reasonable parent." *Id.*

In 1993, the Kentucky Supreme Court rendered *Squires v. Squires*, Ky., 854 S.W.2d 765 (1993), wherein the court discussed at length the concept of joint custody and held that a cooperative spirit between parties was not a condition precedent to the entry of a joint custody award. Although *Squires* did not involve a custody modification, the court recognized the trial court's "power to modify custody in the event of a bad faith refusal of cooperation ."[8] *Id.* at 769.

---

**6.** This court acknowledged the *Carnes* case in *Erdman v. Clements*, Ky.App., 780 S.W.2d 635, 637–38 (1989), but chose to distinguish it from the facts therein.

**7.** Although the *Chalupa* court stated that joint custody *can* be modified when the parties are not cooperative, it did not set the failure to

cooperate as a threshold requirement to joint custody modification.

**8.** Again, the failure to cooperate was not deemed to be a threshold requirement to joint custody modification.

The following year, the court of appeals rendered *Mennemeyer*, in which we held that "in nonconsensual modification situations involving joint custody, ... the trial court may intervene to modify a previous joint custody award *only if* the court first finds that there has been an inability or bad faith refusal of one or both parties to cooperate." *Mennemeyer*, 887 S.W.2d at 558 (emphasis added). *Mennemeyer* established "a threshold procedural requirement, regarding the existence of an inability or bad faith refusal of the parties to cooperate, which must be met before a trial court may consider whether to modify an award of joint custody." *Jacobs v. Edelstein*, Ky.App., 959 S.W.2d 781, 784 (1998). *Mennemeyer* also reaffirmed the *Benassi* decision, stating that joint custody is no award of custody at all when considering modification and that modification of a joint custody decree is not governed by the general custody modification statutes of KRS 403.340 and KRS 403.350 but is determined pursuant to KRS 403.270. *Mennemeyer*, 887 S.W.2d at 556.

This court reaffirmed the principles of *Mennemeyer* in *Stinnett v. Stinnett*, Ky. App., 915 S.W.2d 323 (1996), and in *Jacobs*. In *Jacobs*, we clarified our *Mennemeyer* decision and held that *Mennemeyer* should not be interpreted to mean that the threshold requirement must be met before a trial court may address issues other than disputed modification of custody or primary physical possession. *Jacobs*, 959 S.W.2d at 784. In other words, we held that it was not necessary to meet the threshold requirement to resolve issues such as disagreements concerning a child's educational or religious upbringing. *Id.* We further clarified *Mennemeyer* by noting that once the threshold requirement was met, a court was not compelled to award sole custody to one parent or the other but could continue the award of joint custody. *Id.* at 785.

This brings us to our recent decision in *Briggs*, wherein the mother and father of the child were awarded joint custody with an equal division of time with the child. *Id.* at 761. The *Briggs* court stated that *Mennemeyer* "hinted" that grounds sufficient to modify a sole custody order under KRS 403.340 were also sufficient grounds to modify joint custody. *Id.* at 762. We then specifically held in *Briggs* that joint custody could be modified under KRS 403.340 even if the parties were cooperating with each other as long as a party could prove that the child's physical, mental, moral, or emotional health was endangered. *Id.* Although we referred to our ruling in *Briggs* as "necessary to fill the gap in the law," *id.*, it nonetheless flies in the face of *Benassi* and *Mennemeyer*.

Having reviewed and examined the history of joint custody in Kentucky courts, we conclude that the approach of *Benassi* to joint custody was flawed and that it led to the improper threshold requirement of *Mennemeyer*. When the *Benassi* court held that joint custody is not an award of custody at all, that KRS 403.340 and KRS 403.350 do not apply to joint custody modifications, and that joint custody modification motions should be heard de novo in accordance with KRS 403.270, it ignored the reality that joint custody is, in fact, a form of custody. Not only has joint custody been awarded by courts as a form of custody for a number of years, but it has also been recognized and authorized by the General Assembly as a form of custody since 1980. KRS 403.270(5). Furthermore, only six years after *Benassi*, this court even indicated a preference for joint custody by holding that trial courts should consider joint custody before considering sole custody. *Chalupa*, 830 S.W.2d at 393. Although the Kentucky Supreme Court's decision in *Squires* stopped short of endorsing the *Chalupa* court's preference for joint custody, it recognized that "so long as KRS 403.270(4) [9] remains the law of Kentucky, joint custody must be accorded the same

---

9. KRS 403.270(4) was formerly KRS 403.270(3) but is now KRS 403.270(5).

dignity as sole custody and trial courts must determine which form would serve the best interest of the child." *Squires,* 854 S.W.2d at 770.[10] Therefore, we conclude that *Benassi* was wrong in not recognizing joint custody as a form of custody.

The effect of *Benassi* was to destroy the statutory threshold requirements for modifying joint custody as set forth in KRS 403.340 and KRS 403.350—namely, that the parties must wait two years after the entry of the decree and must show a change in circumstances. KRS 403.340. These statutory safeguards had prevented parties to a joint custody award from petitioning for modification every time there was a dispute. By eliminating these requirements, however, *Benassi* opened wide the door for parties to challenge joint custody awards. After *Benassi*, a joint custody arrangement was subject to modification at the whim of any party at any time for any reason, since *Benassi* had held that such an award was no award at all and that modification motions must result in de novo determinations.

The *Mennemeyer* court viewed this lack of a threshold requirement as a problem which "would inappropriately encourage joint custodians to continually engage in ongoing disputes regarding physical custody, thereby potentially disrupting established living arrangements at any time without any justification or the use of any judicial safeguards." *Mennemeyer,* 887 S.W.2d at 558. Thus, *Mennemeyer* imposed a requirement that a party seeking to modify a joint custody award must prove an inability or bad faith refusal of one or both of the parties to cooperate as a threshold to modifying joint custody. *Id.*

The appellate courts of this state have struggled with applying *Benassi* and *Mennemeyer* and have attempted to explain, clarify, or refine the holdings of these two cases. In *Stinnett*, we noted that the requirement of *Mennemeyer* that there must be an inability or bad faith refusal of the parties to cooperate must "be read in conjunction with our supreme court's definition of 'cooperation' as it applies to joint custody situations." *Stinnett,* 915 S.W.2d at 324. We then held that a trial court may intervene and modify joint custody where there is an inability or bad faith refusal of a party to rationally participate in decisions concerning the child's upbringing. *Id.*

Thereafter, this court explained in *Jacobs* that a mother's failure to stop drinking constituted a bad faith refusal to cooperate even though there was otherwise not an inability to cooperate with the other party. *Jacobs,* 959 S.W.2d at 784–85. Finally, in *Briggs,* when we could not stretch *Mennemeyer* to meet the facts, we simply held that "our ruling is necessary to fill the gap in the law . . . where the parents in a joint custody arrangement are cooperating with each other, but the child is nevertheless endangered by his present environment with one of the parents." *Briggs,* 3 S.W.3d at 762.

As *Mennemeyer* became the law in response to the *Benassi* decision, we must overrule both. We do so for three reasons. First and foremost, *Benassi* and *Mennemeyer* establish a de novo determination and a threshold requirement in joint custody modifications which alters the statutory scheme for modification of custody under KRS 403.340.[11] KRS 403.340(1)

---

**10.** The *Benassi* court reasoned that KRS 403.340 and KRS 403.350 related only to modification of sole custody awards. *Id.* at 869. We can only surmise that its interpretation is founded upon the statute's use of the singular term "custodian." KRS 403.340. We believe those statutes are more properly interpreted as being applicable to both joint and sole custody awards. In fact, to accept the *Benassi* court's interpretation would re-

quire a belief that the legislature intended to provide a modification statute for sole custody situations but not for joint custody situations.

**11.** As Justice Leibson predicted in his dissenting opinion in the *Squires* case, "[i]t is a serious mistake to adhere to *Benassi* when we have never considered its ramifications, much less whether it properly decides whether the

sets forth conditions under which a custody decree may be modified earlier than two years after its date. KRS 403.340(2) provides that custody may be modified after two years where a change of circumstances is shown and the modification serves the best interests of the child. This statute further provides, however, that modification shall be denied unless one or more of four circumstances exist.[12] When *Benassi* ignored the custody modification statutes because of its faulty premise that a joint custody award was not an award of custody, it resulted in the abolition of statutory requirements.[13] Moreover, the custody modification statutes do not require a party to show an inability to cooperate before the party may be heard on a motion for modification. Our imposition of such a requirement forecloses the statutory rights of the parties in many cases. In essence, *Benassi* was the root of this problem, and *Mennemeyer* continued the fallacy rather than corrected it.

Second, by establishing a threshold requirement beyond those imposed by statute, *Mennemeyer* exceeds our judicial authority. The Kentucky Constitution provides that

> [t]he powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Ky. Const. § 27. The Kentucky Constitution also provides that "[n]o person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter ex-

pressly directed or permitted." Ky. Const. § 28.

Kentucky case law further explains the nature of the separation of powers between the legislature and the courts. "It is to be remembered ... that courts are interpreters and not makers of the law; it is not the province of the courts to usurp the functions of the Legislature ...." *Gathright v. H.M. Byllesby & Co.*, 157 S.W. 45, 154 Ky. 106 (1913). Consequently, "[c]ourts cannot substitute their judgment for the legislative enactment for to do so would be to usurp the power reserved for the legislative authority." *Puryear v. City of Greenville*, Ky., 432 S.W.2d 437, 442 (1968), citing *Schloemer v. City of Louisville*, 298 Ky. 286, 182 S.W.2d 782 (1944). "Moreover, it has been our view, in interpreting Section[s] 27 and 28, that the separation of powers is fundamental ... and must be 'strictly construed.'" *Vaughn v. Knopf*, Ky., 895 S.W.2d 566, 568 (1995).

As we have previously explained, the threshold requirement in *Mennemeyer* was obviously established as a judicial response to the *Benassi* decision. Because the legislature had already spoken to custody modification, the rules established by these cases invaded the province of the legislature and exceeded the authority of this court.

The third reason for overruling *Mennemeyer* is that it fails in its applicability in three areas. Under the *Mennemeyer* threshold requirement, it behooves a party to a joint custody arrangement who alleges statutory grounds to modify custody to become uncooperative with the other party in order to meet the threshold. This encourages the very harm which the court sought to avoid. *Mennemeyer*, 887 S.W.2d

statutes on change of custody apply." *Squires*, 854 S.W.2d at 774.

**12.** See the entirety of KRS 403.340(2), quoted above.

**13.** In Justice Leibson's dissenting opinion in *Squires*, he accurately stated "[b]ut a joint

custody award is a child custody award under KRS 403.270, just the same as is a sole custody award under the same statute. A decree awarding joint custody does not provide a loophole to avoid the statutory mandate in KRS 403.340 and .350, covering modification of a custody decree." *Id.* at 773.

at 558; *Chalupa*, 830 S.W.2d at 393. Additionally, those who are awarded no custody rights whatsoever in a custody decree may have their custody modification motions heard under the statute without meeting the *Mennemeyer* threshold requirement; but, under *Mennemeyer*, those seeking to modify joint custody must meet the threshold. Surely, those without any custody rights should not be treated preferentially to those with custody rights. *Mennemeyer* is too narrow in this regard. Finally, once the threshold requirement is met, there are no requirements for modifying joint custody since hearings proceed de novo. *Mennemeyer* is, therefore, too broad in this regard in that joint custody is easier to modify than sole custody when there is an inability of the parties to cooperate.

■■■ Rather than continue the flawed premise of *Benassi* and the subsequent efforts of *Mennemeyer* and its progeny to correct it, we overrule *Benassi* and *Mennemeyer*. We hold that joint custody is an award of custody which is subject to the custody modification statutes set forth in KRS 403.340 and KRS 403.350 and that there is no threshold requirement for modifying joint custody other than such requirements as may be imposed by the statutes.[14] Our holding today in no way alters or destroys the ability of courts to modify joint custody in situations where the parties are unable to cooperate. Although this court first delineated this authority in *Chalupa* without statutory support, we nonetheless find statutory support by interpreting KRS 403.340(2)(c) and KRS 403.340(3) to cover this situation.

Because *Carnes* is directly on point on both factual and legal grounds and therefore constitutes precedent, and because *Benassi* and *Mennemeyer* are overruled, we vacate the trial court's order and re-

mand for consideration of Robert's motion in accordance with this opinion.

BARBER, GUIDUGLI, HUDDLESTON, JOHNSON, KNOPF, McANULTY, and TACKETT, Judges, concur.

SCHRODER, Judge, concurs in the result only by a separate opinion in which EMBERTON, Judge, Joins.

GUDGEL, Chief Judge, dissents by a separate opinion in which COMBS, DYCHE, and MILLER, Judges, Join.

MILLER, Judge, dissents by a separate opinion in which GUDGEL, Chief Judge, and COMBS and DYCHE, Judges, Join.

SCHRODER, Judge, concurring in result only.

I agree with the majority's holding that joint custody is a form of custody and would overrule *Benassi v. Havens*, Ky. App., 710 S.W.2d 867 (1986). It follows that if joint custody is a form of custody, that modifications must follow the requirements of KRS 403.340. This would also require that *Mennemeyer v. Mennemeyer*, Ky.App., 887 S.W.2d 555 (1994) be overruled because *Mennemeyer* begins with the premise that joint custody is no award at all when considering modification. However, I agree with Judge Miller's dissent wherein he opines that the *Carnes v. Carnes*, Ky., 704 S.W.2d 207 (1986) case is not a joint custody case but a sole custody situation with liberal visitation.

I would also omit all references to the violation of the separation of powers argument in overruling *Mennemeyer*. When *Benassi* held joint custody was not an award of custody, that left us *without* statutory modification requirements. The *Mennemeyer* Court was not trying to

---

**14.** We understand that joint custody modification under KRS 403.340 will be difficult as is sole custody modification because "the statutes were structured to discourage a postjudgment litigation except where a party seeking to change custody can first cross one of

the thresholds establishing KRS 403.340." *Quisenberry v. Quisenberry*, Ky., 785 S.W.2d 485, 488 (1990). However, under *Benassi* and *Mennemeyer*, joint custody modification was impossible unless the movant could show that the parties were unable to cooperate.

usurp the functions of the Legislature, but was filling in some gaps in the form of due process, much like *Briggs v. Clemons*, Ky. App., 3 S.W.3d 760 (1999). We were wrong in the *Benassi* case and everything that follows from that holding is wrong. However, it does not follow that the *Mennemeyer* Court was substituting its judgment for that of the Legislature.

In the case sub judice, I would agree that KRS 403.340 (Modification of Custody Decree) applies to joint custody cases, but I would stop there. The majority feels the child has been integrated into the family of the father with the mother's consent since he spent four nights a week with the father and three nights a week with the mother. Why? Was he not still integrated into the mother's family? Does the aggregate number of hours translate into integration? I believe the majority is creating a legal fiction if it believes the child was not still integrated into the mother's family. Hopefully, in all joint custody situations, the child will be an integral part of each parent's family. Joint custody is different from sole custody with liberal visitation. Let us not forget the distinctions so soon after overruling *Benassi* and *Mennemeyer*.

EMBERTON, Judge, concurs in this opinion.

MILLER, Judge, dissenting.

I dissent. To me, the majority opinion seems to disregard reality.

The decision to dissolve the marital bond and settle the concomitant issue of child custody and care is one of the most painful and emotional of all human experiences. Each experience is alike but in a different way. Judicial resolution is difficult to say the least. Any effort to render the judicial task less onerous and to diminish the trauma to litigants is highly desirable.

When parties decide to dissolve the marital bond, there are three significant areas of concern: (1) dissolution of the marital contract; (2) assignment and disposition of property; and (3) care and support of infant children. Not infrequently, the latter concern is presented to the court upon agreement of the parties. Economics dictate such. For many, a protracted divorce may well lead to financial ruin. It is thus a laudable goal to resolve the matter of custody through agreement of the parties.

An agreement of custody often leaves children as it finds them—in the joint custody state into which they were born. Ordinarily, the court summarily ratifies the agreement and no adversarial proceeding underlies the joint custody decree.

Upon the unlikely failure of the "agreement," I think fair play demands the matter of custody be heard *de novo* under Kentucky Revised Statutes (KRS) 403.270. Otherwise, the parties would be effectively denied an initial adversarial proceeding adjudicating custody pursuant to the child's best interest. KRS 403.270(2). Moreover, any other rule would be counterproductive. Such would discourage agreement and result in lengthy adversarial proceedings for fear of being bound by the two-year period of repose set forth in KRS 403.340(1). I would, thus, apply KRS 403.340(1) only in cases where custody had been awarded upon findings entered after a full adversarial hearing.

The majority relies upon *Carnes v. Carnes*, Ky., 704 S.W.2d 207 (1986), for the proposition that KRS 403.340 is implicated in cases of joint custody agreements. The majority specifically states that *Carnes* "requires a modification of a joint custody agreement under KRS 403.340 ...." I, however, view the majority's interpretation of *Carnes* as somewhat misplaced.

The majority presupposes that *Carnes* actually involves a joint custody decree. While it is true the decree was labeled as such, the *Carnes* court pointed out:

In actuality, the "joint custody" decree granted custody of the children to Humfleet and visitation rights to Carnes.

*Id.* at 208. To fairly interpret *Carnes*, the above sentence must be given due consid-

eration. The *Carnes* court uniquely quoted the phrase "joint custody" and plainly stated the decree, in fact, granted custody to Humfleet and visitation rights to Carnes. Such is not the nature of a joint custody decree, but rather a sole custody decree. In joint custody, one parent is not "granted custody" and the other visitation; rather, both parties enjoy joint custody of the child. It is my opinion that *Carnes* deals with modification of a sole custody decree and has no application to a joint custody agreement.

In view of the foregoing, I would adhere to the principle enunciated in *Benassi v. Havens*, Ky.App., 710 S.W.2d 867 (1986). I also have no serious objection to the restriction placed upon *Benassi* by *Mennemeyer v. Mennemeyer*, Ky.App., 887 S.W.2d 555 (1994). I, however, think the restriction unnecessary. Because of the enormous costs involved in present day judicial proceedings, "running-to-the-courthouse" over custodial matters is not so prevalent as it once was. Moreover, the modern trend toward joint custody in lieu of sole custody, wherein the custodial parent had almost dictatorial power over matters of education and moral training, has lessened the desire to re-litigate custody arrangements. The problem is more illusory than real. In any event, I would not overrule *Mennemeyer*.

For the foregoing reasons, I would affirm the decision of the circuit court.

GUDGEL, Chief Judge, and DYCHE and COMBS, Judges, Join in this dissenting opinion.

GUDGEL, Chief Judge, dissenting.

Although I join in Judge Miller's dissenting opinion, I believe it is appropriate to make certain additional comments.

Sections 402 and 409 of the Uniform Marriage and Divorce Act (UMDA) originally provided the basis for KRS 403.270 and KRS 403.340, respectively. Neither Section 402, pertaining to custody determinations, nor Section 409, pertaining to custody modifications, addresses the issue of joint custody. Similarly, when enacted in 1972, neither KRS 403.270 nor KRS 403.340 addressed the issue of joint custody. KRS 403.270 was amended in 1980 by the addition of subsection (3) (now subsection (5)), which provides that "[t]he court may grant joint custody to the child's parents if it is in the best interest of the child." However, KRS 403.340 has never been amended to address issues regarding the modification of joint custody.

Although KRS 403.270 permits a joint custody award which the court believes is in the child's best interest, as a practical matter many joint custody arrangements are reached by agreement of the parties. Certainly, this process should be encouraged, as the resolution of custody issues by agreement promotes the laudable goals of reducing conflict between the parties and the subsequent harm to their children, reducing costs to the parties, and promoting judicial economy. However, it is clear that in uncontested joint custody situations, courts generally do not devote the same degree of attention to considering the "relevant factors" set out in KRS 403.270(1)(a) through (e) as would occur in contested custody situations. Instead, courts understandably tend to rely on the judgment of the parties that joint custody would best serve their own children's interests. These facts led to the statement in *Benassi v. Havens*, Ky.App., 710 S.W.2d 867, 869 (1986), that modification in joint custody cases "should be made anew under KRS 403.270 as if there had been no prior custody determination. As a practical matter, joint custody is no award at all when considering modification of the arrangement."

It is my view that, in overruling *Benassi*, the majority opinion overlooks the fact that awards of joint custody are frequently based on parties' agreements, and are made without the type of intensive judicial scrutiny afforded to contested custody cases. Currently, existing case law provides that if joint custody fails and the parties seek judicial intervention, the court

should first consider its ability to modify the existing joint custody in light of *Mennemeyer v. Mennemeyer*, Ky.App., 887 S.W.2d 555 (1994), and its progeny. Those cases establish

a threshold procedural requirement, regarding the existence of an inability or bad faith refusal of the parties to cooperate, which must be met before a trial court may consider whether to modify an award of joint custody. Similar to the threshold procedural requirement set out in KRS 403.340(1) regarding the modification of a sole custody decree within two years of its inception, the *Mennemeyer* threshold requirement simply is a first step which must be satisfied before a party may proceed in his or her attempt to modify a joint custody decree. Once this threshold requirement is met, the trial court may then make a de novo determination of custody in accordance with the child's best interest, utilizing the factors set forth in KRS 403.270.

*Jacobs v. Edelstein*, Ky.App., 959 S.W.2d 781, 784 (1998).

The majority opinion, by overruling *Benassi* and *Mennemeyer*, and by limiting the modification of joint custody to those situations which satisfy the threshold requirements of KRS 403 .340(1), in essence dictates that no motion may be made to modify joint custody prior to the passage of two years from the joint custody decree unless accompanying affidavits show that "there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." *Id.* Even after that two-year period, KRS 403.340(2) provides in pertinent part that

the court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is

necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:

(a)The custodian agrees to the modification;

(b)The child has been integrated into the family of the petitioner with consent of the custodian; or

(c)The child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him[.]

Thus, absent some agreement between joint custodians, the application of KRS 403.340(2) will require the parties to show the presence of serious endangerment before there may be a modification of joint custody. It is my opinion that such a requirement is inconsistent with the realities of how joint custody is awarded by courts.

Joint custody by its very nature requires parents to exercise certain levels of cooperation, perhaps particularly when young children are involved. Obviously, cooperation between divorced parents benefits the children, the parents, and society in many ways and should be encouraged by the courts. Unfortunately, however, even despite good intentions and efforts by one if not both parties, the necessary level of cooperation is not always achieved by divorced parents, and judicial intervention may then become necessary. However, since often the circumstances pertaining to the inability or bad faith refusal of the parents to cooperate and the failure of joint custody could not be described as ones which "seriously endanger" the child(ren), the majority's opinion will leave such parents with no way to judicially resolve their inabilities or bad faith refusal to cooperate in sharing joint custody. I fear that as a result, attorneys may well discourage their clients from pursuing joint custody due to concerns that problems

may arise between the parties which could not easily be remedied by the courts. Instead, it seems likely that attorneys will encourage their clients to pursue greater custodial control through sole custody, resulting in increased costs to the parties, to the courts, and to society as a whole.

Finally, it should be noted that the language of KRS 403.340(2) itself is inconsistent with the majority's opinion that the statute is intended to apply to the modification of joint custody decrees. As quoted above, the statute repeatedly refers to one but not both of the child's parents as "the custodian." However, as there is no determined single "custodian" in a joint custody situation, it would be illogical to apply that terminology to either party in a joint custody situation such as the one now before us. Contrary to the majority's opinion, therefore, the *Mennemeyer* threshold requirement does not invade the province of the legislature by addressing an issue as to which the legislature has already spoken.

I would affirm the trial court's opinion.

DYCHE, COMBS, and MILLER, Judges, Join in this dissenting opinion.