G. T. O'BRYAN, Appellant,

v.

MASSEY–FERGUSON, INC., Appellee.

Court of Appeals of Kentucky.

Nov. 23, 1966.

Rehearing Denied May 12, 1967.

Thacker & Kramer, Bratcher, Rummage, Beard & Flaherty, Owensboro, for appellant.

Humphreys, Jones & Short, Owensboro, for appellee.

DAVIS, Commissioner.

After G. T. O'Bryan had obtained a verdict of $50,000 against Massey-Ferguson, Inc., the trial court set the verdict aside and entered judgment n. o. v. dismissing O'Bryan's claim. CR 50.02. Upon this appeal O'Bryan urges that the judgment

n. o. v. be set aside and that judgment in his favor be directed pursuant to the jury's verdict. O'Bryan's claim against Massey-Ferguson was based on alleged breach of "promises, representations and commitments made to the appellant in consideration of, and to induce, his signing up as a retail dealer" for Massey-Ferguson, to employ appellant's explanation of the case.

It appears that appellant has been a retail dealer for Massey-Ferguson, and its predecessor companies, since 1950. His business establishment is located in Owensboro. There have been several written contracts evidencing the dealership agreement; they have been in substantially the same terms. The contract that was current during the period pertinent to this litigation was dated November 10, 1960, the date it was executed by O'Bryan, and December 15, 1960, the date it was executed in behalf of Massey-Ferguson, by an officer of the company.

Our view of the case makes it necessary to examine two portions of the written agreement in detail. After an introductory paragraph in which the principal place of business of appellant is described as 1035 West Fourth Street, Owensboro, Kentucky, the contract continues in part as follows:

"1. SELLING RIGHTS OF COMPANY PRODUCTS

\* \* \* \* \* \*

b. In consideration of the faithful performance by Dealer of the undertaking set forth herein, Dealer is hereby granted the right to purchase Company Products for the effective period of this agreement. The trade area tributary to Dealer's principal place of business shall be considered the area in which Dealer is primarily responsible for development of the maximum volume of potential sales of Company Products. This area is not exclusive to Dealer and Company reserves the unrestricted right to sell Company Products to anyone, anywhere."

Another significant portion of the written agreement states:

"4. GENERAL CONDITIONS:

\* \* \* \* \* \*

b. Dealer acknowledges that no representations or statements have been made to him which would modify or tend to modify any of the provisions of this agreement in any way. All prior agreements and oral or collateral agreements heretofore or hereafter made and purporting to modify the provisions of this agreement shall have no force or effect. No representative of Company has authority to waive any provisions or to modify or to change the terms of this agreement excepting only by a supplemental written agreement executed by duly authorized Officer of Company and by Dealer."

Without a detailed recitation of the evidence, we think it fairly states appellant's contention to say that he adduced evidence (and for this purpose we will assume its verity) showing that he had always been assured by the several branch managers that his dealer-territory included Daviess, McLean, Hancock and Ohio Counties. These branch managers assured appellant that the company would not establish a dealership in any of the four counties without giving appellant the "first refusal" of such a dealership. These assurances to appellant were renewed in early 1960 (prior to the signing of the pertinent written contract) when Mike Gary assumed the branch manager's duties.

In 1962, without any prior notice to appellant, a dealership for Massey-Ferguson products was established at Sacramento in McLean County. Published advertisements relating to the new dealership proclaimed that it had been established by Massey-Ferguson and that the new firm was estab-

lished as Massey-Ferguson's "franchised dealer for McLean, Hopkins and Muhlenberg Counties." Witnesses for the appellee had testified that the company had a policy which forbade establishment of exclusive or franchise dealers, and that no dealership arrangements were made in which specific territorial limits were designated. The published advertisement presented stout rebuttal of that testimony.

Appellant contends (1) that since the contract was silent on the matter of establishment of additional dealerships the parol evidence rule is inapplicable; (2) that in any event the contract is so vague, uncertain and ambiguous as to be susceptible to different interpretations, so that parol evidence was admissible touching the issue of the true intention of the parties; (3) the contract should be construed against appellee since it was prepared by appellee; (4) the trial judge abused his discretion in sustaining the motion for judgment n. o. v.

■ It is observed that section 1–b of the contract specifically provided that the Company reserved the unrestricted right to sell company products to anyone, anywhere. We think that language is too clear to admit of extraneous explanation. "Unrestricted" means without limit; "anyone" is an all-encompassing pronoun which is broad enough to include a retail dealer; "anywhere" is as broad an area as can be imagined. These expressions shut the door on any contention that appellant obtained a territory in which he retained a veto power upon the company's right to sell its products, whether to another dealer or "anyone" else.

Section 4–b of the contract very plainly provides that "all prior agreements and oral or collateral agreements heretofore or hereafter made and purporting to modify the provisions of this agreement shall have no force or effect."

■ The alleged agreements upon which appellant relies were (1) oral, (2) prior to the date of the 1960 contract, (3) not made by an officer of the appellant, and (4) not incorporated into any subsequent written agreement. It is plain that these "side" agreements were specifically referred to in section 4–b of the contract. Appellant conceded that he knew of the contract's provisions, but explained that he signed it on the theory that it was "sign or else." In this circumstance we feel that there is no basis for exploring the parol evidence rule. The explicit terms of the contract utterly forbid the very type of agreement upon which the appellant relies. In such state of case there is no choice except to enforce the contract as written. It is not contended that there was fraud in the inducement of the contract, nor is any attempt made to reform or rescind it. In the absence of ambiguity a written instrument will be enforced strictly according to its terms. Cf. Mounts v. Roberts, Ky., 388 S.W.2d 117; McMahan v. Hunsinger, Ky., 375 S.W.2d 820. The words are plain, and will be given their usual meaning. Bays v. Mahan, Ky., 362 S.W.2d 732.

■ Appellant directs attention to McDermott v. Byrley Supply Co., 234 Ky. 670, 28 S.W.2d 988, and contends that even if the trial court erred in admitting the parol evidence, since the evidence had been admitted the case was properly submitted to the jury, and no motion for directed verdict would avail appellee. The difficulty with this argument is that in the cited case, and others like it, the erroneously admitted evidence was *relevant* though *incompetent*. In the present case the parol evidence was not relevant. The term "relevant" as applied to evidence means that the evidence tends to establish or disprove an issue in litigation. "Where there is nothing in the issues presented to warrant the proof offered, it is properly excluded." 20 Am. Jur., Evidence, Section 247, p. 241. In face of the express terms of the contract there was no issue relating to the side agreement upon which appellant relies; thus evidence touching that point bore no relation to any issue and was not relevant.

The judgment is affirmed.