**Kenneth DUDGEON, Appellant,**

v.

**Delois DUDGEON, Appellee.**

Court of Appeals of Kentucky.

Sept. 25, 1970.

Robert M. Spragens, Jr., Lebanon, for appellant.

Barry Bertam, Campbellsville, for appellee.

REED, Judge.

In this divorce action, the trial judge awarded the custody of the parties' two infant children to the mother. The sole issue presented by the father's appeal is whether that decision was so clearly erroneous as to constitute an abuse of discretion. We have concluded that we are unable to find an abuse of the discretion vested in the trial judge, and we affirm his judgment.

Kenneth Dudgeon, the appellant-husband, and Delois Dudgeon, the appellee-wife, after some years of unhappy marriage, separated in July, 1969. Two children were born to the marriage, one of whom is now seven years old, and the other is four years old. The older child is a boy and the younger child is a girl. Since no issue is made on this appeal concerning the judgment as it relates to the questions of divorce and alimony, we find it unnecessary

to detail the evidence relating to those matters. The trial judge granted each of the parties a divorce from the other; he awarded lump sum alimony and child support payments and the custody of the children to the wife.

Several months prior to the separation, Delois became acquainted with a married man who lived near the Dudgeon home. This man began to visit her at night while Kenneth was at work. After the parties were separated and while the divorce action was in progress, the relationship between Delois and her married neighbor, who is now divorced, blossomed into a full-fledged affair. The neighbor began to visit the Dudgeon home nearly every night after the children went to bed. On one such occasion, Kenneth returned to the house, ostensibly to see his children, and found Delois and the neighbor in an extremely compromising situation. The children were in bed asleep in another room.

Delois admitted that she had engaged in sexual intercourse with the neighbor. There is no proof that Delois associated wrongfully with any other man either during her marriage to Kenneth or afterwards. Kenneth admitted that Delois had been a good mother to the children. Delois admitted her intimacy with the man after her separation from Kenneth. She stated that she and this man were considering marriage but that her children had never seen him and that she would not marry him if the children would be unhappy in that event.

Kenneth testified that if the custody of the children were awarded to him, he would keep them in the home of his parents. Their home, although clean and comfortable, is somewhat crowded and alteration of it would be necessary to accommodate the children. The evidence establishes that, except for this indiscretion, Delois has been a good mother and makes adequate provision for the children.

The trial judge stated that in his opinion the children would be much better off and that it was "in their best interest and welfare" that they be in the custody of their mother with right of visitation in their father.

The judge further noted that at a conference between the parties and their counsel with the court he had stated that the custody of children was a continuing thing and such an award lasted only until further orders of the court, and if the conduct of Delois should continue it might cause her to give up custody.

■ Appellant concedes that the trial judge's discretion in determining the best interest and welfare of the children when making a custody award is indeed broad. He also concedes that this court has continually refused to establish rigid guidelines which a trial court should follow when determining questions of child custody. Appellant urges, however, that where the mother admits to immoral behavior in her own home while the children are located therein; where the father has not been shown to be an unfit parent; and where the mother has not married the man with whom the immoral acts took place, the trial judge's broad discretion ends. Appellant maintains that custody in such situation must be awarded to the father. He construes the remark of the trial judge concerning the conduct of the mother to mean that Delois' present conduct is so reprehensible as to make her unfit.

■ We have reviewed our case law concerning the issue presented by this appeal and find that it is consistent in stating the obvious proposition that courts, both trial and appellate, are presented with no problem of greater complexity than the delicate and awesome responsibility of adjudicating the custody of children. We find it apparently inconsistent in reaching appellate results when one particular circumstance is overemphasized in reviewing an award of custody as compared with other relevant circumstances. We do find it consistent, however, in its advocacy of the general proposition that the issue is best

determined by the trial judge and that a very clear and substantial showing of manifest error on his part is required before an appellate court should undertake to substitute its judgment for his. This attitude is influenced, and properly so, by the system which vests trial judges with continuing supervision so that they may by process of reexamination achieve the best result practicable within the limitations of the system and within the limitations inherently created by the tragic occurrence itself as it affects the lives of the innocent children.

We do not condone Delois' conduct, nor did the trial judge. The question remains, however: On balance what result will promote the best interest of the children concerned regardless of the human shortcomings or strengths of the adults involved?

In Jones v. Sutton, Ky., 388 S.W.2d 596 (1965), we said in a case involving the custody of two infant children that where a woman had been indiscreet with a man, in order to brand her as so morally depraved and unfit as to be disentitled to the custody of infant children on that ground alone there must be evidence of promiscuity. Promiscuity is defined in that case not to be an isolated incident of sexual relations with one particular person but denotes an indiscriminate grant of physical favors to persons of the opposite sex without any requirement of love.

We recognized the requirement of promiscuity in Kelien v. Kelien, Ky., 273 S.W. 2d 360 (1954). In that case the mother had been sexually indiscreet with another man. The trial judge awarded the custody of the infant children to the mother, nevertheless. We refused to disturb his conclusion, because on balance there was evidence that, despite the mother's fault, the children's best interest would be best served by leaving them with her rather than by adopting the alternative of vesting custody in the father; or at least there was evidence supporting such a conclusion by the trial judge.

In Wilcox v. Wilcox, Ky., 287 S.W.2d 622 (1955), the mother was sexually indiscreet. In that case, we pointed out that the evidence showed, so far as her relationship with children was concerned, that she was an excellent mother. We noted the lack of promiscuity on her part. We also noted that the alternative proposed by the father would not provide the children with as acceptable an environment as they would enjoy in the custody of their mother; or at least the evidence could induce the trial judge to so believe.

In Morris v. Morris, Ky., 439 S.W.2d 317 (1969), the father complained that after the separation the mother allowed a married man to remain all night in her apartment on occasions and that this demonstrated that custody of two infant children should be transferred to him. The mother's evidence was that she was properly taking care of the children and the trial judge decided to leave the children with the mother and this court again reemphasized its reluctance to disturb the finding of the trial judge in this type of case. We pointed out therein the better position of the trial judge to assess and continually supervise the matter. We could not characterize his decision as clearly erroneous.

Finally, in Bickel v. Bickel, Ky., 442 S. W.2d 575 (1969), we pointed out again our reluctance to disturb the conclusion of the trial judge as to proper custody of infant children in divorce actions. We pointed out the trial judge's continuing supervision and his right to assess the custodial parent's demonstration of fitness or lack of it after the award of custody.

In the case before us, these children have continuously been in the custody of their mother. There is no showing that she has neglected them, but on the contrary the evidence is without contradiction that she has been an interested and loving mother.

█ It is true, as appellant points out, that many of our former opinions discuss-

ing this problem of the sexually indiscreet mother appear to place emphasis on whether she marries the man with whom she has been indiscreet. We think the emphasis is misplaced. It may very well be relevant to a determination of whether or not she is promiscuous, but so far as the determination of custody is concerned, she might provide a better environment for the child in conceivable situations if she concluded not to marry the man than in those instances where marriage takes place. This is but another illustration of what we think is inescapable: We cannot create cubicles labeled "promiscuity," "marriage to the man," or "nonmarriage to the man," and then in computer-like fashion attempt to cram the fate of innocent children into one cubicle or the other to reach a result. The issue must be resolved by careful and conscientious trial judges who weigh all relevant factors; make a difficult decision; then are available and vigilant to supervise the result. This is simply the best we can do with the means available. Appellate review must confine itself in changing determination of the custody of infants in divorce cases to those situations where there is a clear and substantial showing that the manifest error was committed. We cannot say that in this case.

The judgment is affirmed.

All concur.