# Supreme Court of Kentucky FINAL



2005-SC-0761-DGE

CHARLES JACKSON CROUCH III                                  APPELLANT

V.

APPEAL FROM COURT OF APPEALS
2004-CA-002004-MR
BOYD CIRCUIT COURT NO. 96-CI-0728

VIRGINIA EVA CROUCH                                          APPELLEE

## OPINION OF THE COURT BY JUSTICE GRAVES

### Affirming

This appeal addresses the proper statutory procedure that must be followed in order to modify child custody. Appellant, Charles Jackson Crouch, II, appeals from an opinion of the Court of Appeals which reversed a trial court decision modifying custody. The Court of Appeals found that the trial court lacked proper jurisdiction to modify a child custody arrangement between Appellant and Appellee, Virginia Eva Crouch. This Court granted discretionary review, and we now affirm the Court of Appeals' opinion in its entirety.

The facts in this case are not in dispute. The parties were divorced on December 17, 1996. Pursuant to the divorce decree and by consent of both parties, the trial court entered an order granting them joint custody of their minor child, born July 1994, and placing actual physical custody of the child with Appellee. The child resided with

Appellee until February 2003 when Appellee, a member of the Kentucky National Guard, was notified and ordered to report to active federal duty within 72 hours (presumably to be deployed overseas). In this very short time frame, Appellee was forced to make expedited arrangements to transfer physical custody of the minor child to Appellant for the duration of her active deployment. Both parties concede that it was their intent for the custody transfer to be temporary and that Appellee would be entitled to reassume physical custody of the minor child upon being released from active duty. On February 10, 2003, an agreed order drafted by Appellant's attorney and purporting to memorialize these intentions was entered by the Boyd Circuit Court. The order stated, among other things, that the child would reside with Appellant "until further Orders of the Court."

Although not deployed overseas, Appellee was mobilized and deployed to Fort Knox, Kentucky, for one year. During this time, Appellee made several trips to visit the minor child in Raceland, Kentucky. In February 2004, Appellee contacted Appellant to inform him that her active duty tenure had been served. Appellee also told Appellant that she had been accepted to Officer Training School. The parties discussed and agreed that Appellee should proceed with attending the four-month training since it would be less disruptive and preferable to allow the minor child to finish the school year at her current school and then transfer physical custody during the summer. At no time did Appellant express any intention to not follow through with the custody transfer that summer.

In July 2004, at the completion of the four-month training, Appellee contacted Appellant to arrange for reassuming the minor child's physical care. At that time, Appellant stated that he would not transfer physical custody and that Appellant would

2

need to obtain a court order to enforce their agreement. On July 28, 2004, Appellee moved the trial court to enforce the December 17, 1996, permanent custody order. On August 30, 2004, the trial court entered an order finding that it was in the minor child's best interests to remain with Appellant. In formulating its decision, the trial court stated:

> The Court finds from the evidence that at the time the agreed order was executed it was the intent of both parties that the child would be returned to the physical custody of [Appellee] at the conclusion of [Appellee's] military alert. If the agreed order had been a contract for the sale of goods, the parties' intent would control as a matter of law. However, in the present arrangement the Court must consider the best interests of the child.

Appellee appealed the trial court's decision to the Court of Appeals. The Court of Appeals found that the February 10, 2003, order was temporary and thus not a modification of the December 17, 1996, permanent custody order. As such, the trial court had no jurisdiction to modify the December 17, 1996, order unless a motion to modify, along with a supporting affidavit, was filed in the case. KRS § 403.350; Petrey v. Cain, 987 S.W.2d 786, 788 (Ky. 1999). Moreover, even if the trial court did have proper jurisdiction, it failed to follow the proper standard of review. See KRS § 403.340; Fowler v. Sowers, 151 S.W.3d 357, 359 (Ky. App. 2004)(under KRS § 403.340, modification is permitted if the trial court finds "a change has occurred in the circumstances of the child or his custodian" and "modification is necessary to serve the best interests of the child").

Appellant challenges the Court of Appeals' opinion, arguing that the February 10, 2003, order was not a temporary order and thus did operate to modify the December 17, 1996, permanent custody order. As such, the trial court properly treated Appellee's July 28, 2004, motion as a motion to modify the February 10, 2003, order, which was

3

properly denied.[1] To support its position, Appellant cites language in the February 10, 2003, order which states, "the parties have agreed that the child shall be allowed to reside with [Appellant] until further Orders of the Court." Appellant contends that such language should be interpreted as conclusive proof that the February 10, 2003, order resulted in a permanent change in custody, regardless of any contrary intent by the parties or the trial court. We decline to adopt such a bright line interpretation in this case.

Although orders of the trial court are not contracts or statutory provisions, we believe that interpretative guidelines employed in such cases are instructive. When interpreting statutory language, KRS § 500.030 states, "[a]ll provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law." When interpreting contracts, "[i]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 106 (Ky. 2003)(quoting O'Bryan v. Massey-Ferguson, Inc., 413 S.W.2d 891, 893 (Ky. 1966)). Where ambiguity exists, "the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." Id.

Interpreting court orders differs from that of statutes and contracts only to the extent that instead of construing the intent of the legislature or the intent of the parties, we must determine the intent of the ordering court. In W.T. Sistrunk & Company v.

---

[1] Of course, even if this were found, the trial court still applied the incorrect standard of review since modification of any permanent custody order is subject to the standards set forth in KRS § 403.340.

4

Kells, 706 S.W.2d 417, 418 (Ky. App. 1986), the Court of Appeals held that " the legal significance of language in an administrative order is always subject to interpretation by a reviewing court, which must enforce such orders according to existing law." Similarly, and in accordance with applicable principles of statutory and contract interpretation, we believe that the legal significance of any particular trial court order is subject to interpretation by a reviewing court. Where the language of the order is clear and unambiguous, we will construe the order according to its plain terms.[2] However, where the order is ambiguous and open to interpretation, we will endeavor to construe and effectuate the intent of the trial court.

The terms of the February 10, 2003, order are by no means clear when read and considered in their entirety. In context, the order's relevant language states:

> That [Appellant] and [Appellee] shall continue to have joint custody of the parties' minor child, [redacted]. The parties having informed the Court that [Appellee] has been called to active military duty, the parties have agreed that the child shall be allowed to reside with [Appellant] until further Orders of the Court.

Although the phrase "until further orders of the court" is generally construed to denote permanency, when the phrase is read in the context of this order, it could also be reasonably interpreted to indicate that the trial court will transfer custody back to Appellee upon completion of her active military duty. This ambiguity is further supported by the fact that no relevant findings or affidavits pursuant to KRS § 403.340 are present or referenced in the language of the February 10, 2003, order, nor is there any reference whatsoever to the December 17, 1996, permanent custody order being modified thereby.

---

[2] Of course, the power of the trial court to correct and modify its own orders pursuant to CR 60.01 and CR 60.02 remains and is completely unaffected by this opinion. See, e.g., Kurtsinger v. Board of Trustees of Kentucky Retirement Systems, 90 S.W.3d 454, 456 (Ky. 2002).

5

In light of the inherent ambiguity of the February 10, 2003, order, we next look to the intention of the trial court which is undisputed in this case. By its own admission and pursuant to the plain language of the order itself, the trial court intended to accomplish the intent of the parties, who both agree that the order was meant to be temporary. It is therefore our duty to interpret the ambiguity in this case in favor of the trial court's intent. As such, we affirm the Court of Appeals' holding that the February 10, 2003, order was temporary and thus, did not effectuate a modification of the December 17, 1996, permanent custody order. The trial court abused its discretion when it refused to grant Appellee's July 28, 2004, motion to enforce the terms of the December 17, 1996, permanent custody order.

We also note that, although not controlling in this case, our interpretation of the February 10, 2003, order is consistent with the newly enacted KRS § 403.340 (5) which provides as follows:

> (5) (a) Except as provided in paragraph (b) of this subsection, any court-ordered modification of a child custody decree, based in whole or in part on:
>
> 1. The active duty of a parent or a de facto custodian as a regular member of the United States Armed Forces deployed outside the United States; or
>
> 2. Any federal active duty of a parent or a de facto custodian as a member of a state National Guard or a Reserve component;
>
> shall be temporary and shall revert back to the previous child custody decree at the end of the deployment outside the United States or the federal active duty, as appropriate.
>
> (b) A parent or de facto custodian identified in paragraph (a) of this subsection may consent to a modification of a child custody decree that continues past the end of the deployment outside the United States or the federal active duty, as appropriate.

Id. (2006 Kentucky Laws Ch. 252 (HB 380), approved April 24, 2006).

For the reasons set forth herein, the decision of the Court of Appeals is affirmed.

Lambert, C.J., Graves, Minton, and Wintersheimer, J.J., concur. Scott, J., dissents by separate opinion in which Roach, J., joins. McAnulty, J., not sitting.

ATTORNEY FOR APPELLANT

Jeffrey L. Preston
Attorney at Law, P.S.C.
Post Office Box 365
Catlettsburg, KY 41129

ATTORNEY FOR APPELLEE

Michael L. Judy, Esq.
312 W. Main Street
Frankfort, KY 40601

# Supreme Court of Kentucky

2005-SC-0761-DGE

CHARLES JACKSON CROUCH III                        APPELLANT

VS.               APPEAL FROM COURT OF APPEALS
2004-CA-002004-MR
BOYD CIRCUIT COURT NO. 96-CI-0728

VIRGINIA EVA CROUCH                              APPELLEE

### DISSENTING OPINION BY JUSTICE SCOTT

Respectfully, I must dissent.

All the differences of opinion in this case center around the unexpected – but wonderfully successful – changes that occurred in a young girl's life within a period of seventeen months when she went to live with her other parent. One side applauds the changes, yet establishes a precedent that mandates the trial court ignore the child's success in life in favor of the status quo. The other would focus on the success and allow the trial court the leeway to make appropriate decisions helpful in the life of a young child, given her success in building a new life. Count me in the latter.

The February 10, 2003 Agreed Order from the Boyd Circuit Court stated that "the child shall be allowed to reside with the [Appellant] until further orders of

the Court," plainly modifying the original custody agreement entered into by the parties in their 1996 Decree and Settlement Agreement. This order was then the dominant order for the child's custody.

Thus, to reconsider the child's custody arrangement, the Boyd Circuit Court correctly conducted a custody hearing pursuant to KRS 403.340(3) due to the change in circumstances, i.e. her mother's completion of her active duty tour. It was then the court's statutory duty to evaluate the situation using the factors set out in KRS 403.340(2)(3)(a-f) and KRS 403.270(2).[1] Cf. Fenwick v. Fenwick, 114 S.W.3d 767, 783 (Ky. 2003)("[T]here is no requirement for modifying joint custody other than such requirements as may be expressed by [K|RS 403.340 and 403.350].").  Thus, it was appropriate for the court to consider the child's interaction and interrelationship with her parents and any other person who may significantly affect the child's best interest, as well as, considering the child's adjustment to home, school, and community. KRS 403.270(1)(c) and (d).[2]

Furthermore, the burden of supplying the affidavits required by KRS 403.340(2) was on the Appellee, as **she was the one moving to change the physical custody.** Undoubtedly, the purpose of both statutes is to place the burden of proof on the parent seeking to modify custody so as to encourage

---

[1] Even though the majority states that the correct standard was KRS 403.340, 403.340(3)(c) specifically references the factors set out in KRS 403.270(2).

[2] We note that the legislature has since amended KRS 403.340, incorporating (5)(a-b) which sets out what should be done when the court-ordered modification of custody is done based upon a parent's active duty as a member of the Armed Forces. It now states that the custody "shall be temporary and shall revert back to the previous [custody] decree at the end of the deployment . . . as appropriate." We must assume that "as appropriate" would mean as long as it is not against the best interest of the child, since the custodial change is obviously not automatic. Moreover, when a statute grants discretion, it always grants enough to accomplish the statutory purpose.

- 2 -

stability in the custodial relationship. However, here, the majority places the burden of the affidavits on the Appellant, even though he was the custodian at the time and the Appellee was the movant who wanted physical custody changed.

Simply put, there was nothing in the Agreed Order that stated the child would automatically go back to live with the Appellee. A further order from the court was required. If the court only meant the order to remain in effect until Appellee returned from deployment, the order would have said that; but, it did not - and for good reason. Speculation (as to the future circumstances), even by a court, would be inappropriate when "the best interest of [a] child" is involved.

For the purpose of review, "the [trial] Court must be found to have been clearly erroneous in its findings of fact, or clearly abused its discretion in that the child's best interests will not be served," and that seems to be the unchanged standard since 1972. Ralph S. Petrilli, Kentucky Family Law, *Custody of Children*, § 26.22 Appellate Review (1988)(citing Largent v. Largent, 643 S.W.2d 261 (Ky. 1982); Enlow v. Enlow 456 S.W.2d 688 (Ky. 1970); Whisman v. Whisman, 401 S.W.2d 583 (1966); Hinton v. Hinton, 377 S.W.2d. 888 (Ky. 1964)). Thus, "if the [trial] Court was not clearly erroneous in its findings of fact, or clearly abused its discretion its decision [should] be affirmed. " Id. (citing Dundgeon v. Dudgeon, 458 S.W.2d 159 (Ky. 1970); Rudd v. Rudd, 419 S.W.2d 573 (Ky. 1967); Gates v. Gates, 412 S.W.2d 223 (1967); Yelton v. Yelton, 395 S.W.2d 590 (Ky. 1965); Hall v. Hall, 386 S.W.2d 448 (Ky. 1965); Renfro v. Renfro, 291 S.W.2d 46 (Ky. 1956); McRenyolds v. Hughes, 398 S.W.2d 482 (Ky. 1966); See also, Taylor v. Taylor, 591 S.W.2d 369 (Ky. 1979)).

- 3 -

Here, the parties mutually agreed the child would live with the Appellant until further orders of the court. To obtain such an order, a motion must be filed. Here, the Court of Appeals and the majority of this Court make it the Appellant's duty to file a motion for custody of his child, even though he already has custody. This is simply not logical.

**Appellee made a motion to change custody of the child**, as she should have. The court then correctly noted in its order that the parties had joint legal custody and that it must consider the criteria contained in KRS 403.270(2) to determine whether that modification should be changed back to its original terms. Therefore, the court conducted a complete custody hearing, including testimony of the parties and an interview with the child. The court then noted that the child had previously enrolled in five different schools within a relatively short period of time, sometimes having to move to another school during the school year. At the time of the hearing, she was well adjusted, having a GPA of 3.7, and was deeply involved in extra-curricular activities such as cheerleading, softball, as well as, the talented and gifted program. She had finished third grade there, all of fourth grade, and was getting ready to start fifth. Moreover, she expressed a strong preference to remain with the Appellant because she was integrated into a new school system and liked her teachers and had made good friends.[3] Also, several members of her family lived in the area, but none lived in Lawrenceburg where her mother resides.

In Taylor, supra., a mother received custody on dissolution, but shortly thereafter, a tornado destroyed her personal belongings causing an "Agreed

---

[3] Her mother testified that the child would once again be enrolled in a different school if custody was awarded to her.

- 4 -

Order of Custody" to transfer custody to her husband. When her life later became stable, she moved the court to transfer custody back to her, and the court then determined the best interest of the child was to live with the mother. The Court of Appeals reversed, but this Court reversed the Court of Appeals and upheld the trial court's decision. As in Taylor, the record here provides sufficient evidence to support the Boyd Circuit Court's decision to keep the child in the custody of her father. There was simply no abuse of discretion.

Based upon the evidence presented, the trial court found her best interest was better served with the Appellant. That decision should have been affirmed. It was not. Thus, I respectfully dissent.

Roach, J., joins this dissent.