Eugenia Sue Wynn ROBINSON, Appellant,

v.

Robert Dale ROBINSON, Appellee.

No. 2006–CA–001095–ME.

Court of Appeals of Kentucky.

Dec. 1, 2006.

Scott M. Webster, London, KY, for appellant.

No Brief for Appellee.

Before ACREE, BARBER, and TAYLOR, Judges.

*OPINION*

ACREE, Judge.

When the Rockcastle Circuit Court entered a judgment dissolving the marriage of Eugenia "Gina" Sue Wynn Robinson (Gina) and Robert Dale Robinson (Dale) on June 23, 2005, it awarded the couple joint custody of their three (3) minor children

with Gina as the "primary custodian."[1] On March 15, 2006, the circuit court modified the joint custody order by making Dale the "primary custodian." Gina appeals that order modifying custody. For the reasons stated, we reverse.

On March 11, 2004, Gina filed her petition for the dissolution of her fourteen-year marriage to Dale. Dale had previously removed himself from the marital residence and resided for the pendency of this action with his parents. Both parties in their initial pleadings expressed a desire for sole custody of their three (3) minor children.

Dale was first to move the court for an order of temporary custody. Prior to the hearing on that motion, the parties were able to agree on certain issues. On June 4, 2004, the court made an entry on its docket sheet[2] noting among other things that mediation had resulted in the parties' agreement that Gina was to have possession of the marital residence until the divorce was final. Though not specifically stated in the record, the parties apparently agreed that the children would reside primarily in the marital residence with Gina. Notably, the court entered no temporary custody order nor did the court order either parent to pay child support.

On July 17, 2004, Gina found it necessary to move the court for temporary child support. Dale responded on July 28, 2004, by moving the court for his own order that he "be designated primary custodian" and that he also be awarded exclusive use of the marital residence. The court, still without entering a custodial order, directed the parties to "maintain status quo."

Six months later, on January 14, 2005, still with no custody or support order in place, Gina re-noticed her motion for temporary child support. At the hearing on the motion ten days later, as reflected only on the docket sheet, the court "set c/s [child support to be paid by Dale] as $575.00 which is a $50.00 reduction for extra time." The "extra time" referenced was one additional day beyond the standard visitation schedule that the parties agreed would be Dale's visitation. Still, no custody order was entered.

According to the Mandatory Case Disclosures filed by Dale and Gina one week before the court's entry of its Findings of Fact, Conclusions of Law and Decree of Dissolution (Decree), custody continued to remain an issue. The first custodial ruling by the trial court appears in the Decree entered June 23, 2005. It stated:

> The court finds that the best interest of the children will be served by awarding the parties joint custody with the mother being the primary custodian, and the father having standard visitation....

---

**1.** As in *Fenwick v. Fenwick,* 114 S.W.3d 767 (Ky.2003),

> [t]he trial court employed the term "primary custodian." This is undoubtedly a misnomer because the trial court awarded joint custody. *Aton v. Aton,* Ky.App., 911 S.W.2d 612, 615 (1995)("There can be no 'primary custodian' in the joint custody context. Joint custody prohibits a court from selecting a primary custodian from two joint custodians. Such an act annihilates shared decision-making, a fundamental principle of joint custody. Although the statement quoted above is a distortion of the law, the *Chalupa* [*v. Chalupa,* Ky., 830

S.W.2d 391 (1992)] opinion reiterates that although one parent may have primary physical possession, the major decision-making is shared."). Accordingly, it is apparent that the trial court intended to designate [Gina] as the primary residential custodian.

*Fenwick,* 114 S.W.3d at 773 fn. 8. Where the trial court or parties are quoted in this opinion, the error is retained. Otherwise, the proper term is used.

**2.** Referred to by the circuit clerk as "Ct. Cal." or Court Calendar.

The Decree went on to divide the marital and non-marital assets and debts between the parties. Finally, the Decree contains the following relevant provision:

If either party should relocate their residence more than 150 miles from Rockcastle County, the time-sharing arrangement from herein shall be subject to *de nova* [sic] review and modification.

Shortly after entry of the Decree, Dale stopped paying certain debts assigned to him. Because the parties' creditors were not bound by the trial court's distribution of the parties' liabilities, the creditors pursued both Gina and Dale for payment; that is, until Dale filed a petition in bankruptcy on October 16, 2005. Thereafter, those creditors pursued only Gina. This added $17,501.78 to her liabilities. She soon was compelled to list the marital property for sale.

It was about this time that Gina received and had been contemplating an offer of employment and managerial training from a Chili's restaurant chain. This employment would provide her and her family with a substantially greater income. However, if she accepted, she would be required to relocate to the Memphis, Tennessee area.

On October 17, 2005, Gina brought a motion to modify Dale's mid-week visitation before the court because she believed that the relocation provision of the Decree required it. The motion was initially heard on October 21, 2005. The court, however, did not rule on Gina's motion then or at any time.

Instead, Dale's counsel requested additional time to respond to the motion and indicated he would be moving to set aside the Decree as to custody on the basis of the newly discovered evidence that Gina desired to move out of state. He further informed the court that he realized *Fenwick v. Fenwick*, 114 S.W.3d 767 (Ky.2003) would normally put the burden on his client to show the contemplated move would endanger the children. He believed, however, that setting aside the Decree would allow a de novo review of the permanent custody determination without the need to show endangerment but, instead, only the best interests of the children.

After hearing from both counsel, the court indicated Dale's need to take discovery to determine "whether or not it's in the children's best interest or what the harm might be to move to Memphis." TAPE No. 089; 10/21/05; 9:14:45. The court then gave Dale "ten (10) days to file motion for modification."

Dale's counsel stuck with his strategy and filed a "Motion to Set Aside Custody Decree" pursuant to Kentucky Rules of Civil Procedure (CR) 60.02. He further requested a subsequent "*de nova* [sic] custody hearing pursuant to the standard of Kentucky Revised Statute (KRS) 403.270, rather than KRS 403.340...." ([Appellee's] Motion to Set Aside Custody Decree, R.118).

The basis of Dale's CR 60.02 motion was fraud and newly discovered evidence. He claimed he only agreed to allow Gina to serve as their children's primary residential custodian because "during the pendency of this action, [Gina] repeatedly assured [Dale], the Court, and her own attorney that she had no plans to leave the state of Kentucky with the children." ([Appellee's] Motion to Set Aside Custody Decree, R.118).

Dale's motion was heard on November 4, 2005. During the hearing, Dale's counsel represented to the trial court that there was a "clause in their joint decree that if Mrs. Robinson relocated more than

120 [3] miles, that we would revisit the issue of custody *de novo.*" (TAPE No. 092; 11/4/05; 9:21:35). The trial court accepted this representation at face value:

> Court: I guess we could have a de novo hearing as to custody but the, if the agreement [sic], and I wasn't aware of that, but if the separation agreement [sic] does have the 120 mile distance provision in it, then there would be a de novo hearing I would imagine.

(TAPE No. 092; 11/4/05; 9:24:26).

The court then denied Dale's CR 60.02 motion. Without stating a basis for continuing to consider modification, the court ordered *"de nova* [sic] testimony to be taken by deposition if Petitioner in fact moves 120 miles from Mt. Vernon per separation agreement. . . ."

Faced with mounting expenses, Gina did make the decision to pursue the significantly more lucrative managerial-track employment with the restaurant chain in Memphis. On December 2, 2005, after being informed of Gina's decision, the circuit court ordered testimony to be taken by deposition and submitted to the court. On March 15, 2006, the trial court, in pertinent part, ruled as follows:

> . . . The parties, by agreement, acknowledge that should either party relocate more than 150 miles from Rockcastle County, the custody and visitation issues would be subject to review and modification. Petitioner has relocated to the Memphis, Tennessee area, thus subject-

ing the decree to de novo review on these issues.

. . . .

IT IS ORDERED that the custody award, child support and visitation order be modified [such] that the parties shall have joint custody of the minor children. . . . The father, Robert Dale Robinson, shall be the primary custodian, and the mother, Eugenia [sic] Sue Wynn Robinson, shall have standard visitation . . . except there shall be no midweek visitation. . . . The mother testified . . . that her income would be $35,000 per year. IT IS THEREFORE ORDERED that the mother shall pay child support to the father in the amount of $710.84. . . .

It is this order that Gina appeals. Because the trial court erred in its interpretation of the June 23, 2005, Decree and in its application of law, we must reverse and order enforcement of the original permanent custody award contained in the Decree.

Child custody relocation litigation is not a new phenomenon in Kentucky. *See, e.g., Duncan v. Duncan,* 293 Ky. 762, 170 S.W.2d 22, 154 A.L.R. 549 (1943)("[S]ole question presented . . . is whether the chancellor erred in modifying the judgment so as to permit [the custodial parent] to move to Pennsylvania and take the children with her."). The arrival of the 21st century, however, heralded an accelerated evolution in this area of the law. This is true nationally [4] as well as in Kentucky where our courts continue to address increasing numbers of such cases.[5] Unfortu-

---

3. The Decree actually said "150 miles," but this error is irrelevant since the contemplated move was greater than 400 miles. This irrelevant error was corrected in the order from which the appeal is taken.

4. Linda D. Elrod, Feature, *States Differ on Relocation,* 28 FAM. ADVOC. 8, 8 (Spring 2006)("Lawyers and judges have noticed the increase in the number of custody disputes in

which relocation is an issue. The reasons are many: the steady high-divorce rate; the number of joint-custody and shared-residency arrangements; the shifting job market; remarriages; and the mobility of today's society.").

5. Despite the Supreme Court's comment in *Fenwick v. Fenwick,* 114 S.W.3d 767 (Ky. 2003) that "the relocation issue, at least in the context of sole custody, has been addressed

nately, despite Kentucky's recent legislative efforts,[6] Chapter 403 of the Kentucky Revised Statutes (Dissolution of Marriage Child Custody) fails to specifically address the special problem faced by our courts when custodial parents desire to relocate with their children subsequent to divorce.

The vast majority of state legislatures has passed a wide variety of laws directly addressing the relocation issue; nearly half require a relocating custodial parent to give advance notice of the move to the other parent, the court, or both.[7] Kentucky is among the minority of states that have no specific statute. Therefore, until our legislature aligns with the majority of states, we are compelled to address relocation/custody issues by applying the general custodial modification statutes, KRS 403.340 and KRS 403.350.

KRS 403.340(2) states:

No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that:

(a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health; or

and settled in Kentucky for more than a decade," *Id.* at 784, Kentucky law in this area continues to evolve at a fast pace. Since 2000, the Kentucky appellate courts have addressed relocation/custody issues in some form in the following cases: *Crouch v. Crouch*, 201 S.W.3d 463 (Ky.2006); *Brockman v. Craig*, 205 S.W.3d 2444 (Ky.App. 2006), *mot. for disc. rev. filed*, (Ky. Aug. 15, 2006)(No. 2006–SC–587–D); *Bowman v. Bowman*, —— S.W.3d ——, 2006 WL 658938 (Ky.App.2006)(Opinion Final, May 5, 2006); *Allen v. Devine*, 178 S.W.3d 517 (Ky.App. 2005); *Cox v. Cox*, 170 S.W.3d 389 (Ky.2005); *Fowler v. Sowers*, 151 S.W.3d 357, 359 (Ky. App.2004); *Fenwick v. Fenwick*, 114 S.W.3d 767, 779 (Ky.2003); *Scheer v. Zeigler*, 21 S.W.3d 807 (Ky.App.2000). We could add to that list a fair number of unpublished opinions.

6. In 2001, child custody litigation in Kentucky was significantly affected when the state legislature amended KRS 403.340. The effect of the amendment was to soften custody modification requirements when a motion for modification is filed more than two years after the decree is entered. *Fowler v. Sowers*, 151 S.W.3d 357, 359 (Ky.App.2004). For modification within two (2) years of the award of permanent custody, the standard remains as strict now as prior to the amendment.

7. The following states require 30 days' notice prior to relocation: Florida (FLA. STAT. § 61.13001(3)(2006)), Georgia (GA.CODE ANN. § 19–9–1 (2006)), Kansas (KAN. STAT. ANN. § 60–1620 (2006)), Maine (ME.REV.STAT.ANN. tit.19–A, §§ 1653(14) & 1657 (2006)), Montana (MONT.CODE ANN. § 40–4–217 (2006)), New Mexico (N.M. STAT. § 40–4–9.1 (2006)), and Virginia (VA.CODE ANN. § 20–124.5 (2006)). These states require 45 days' notice: Alabama (ALA.CODE § 30–3–163 to 167 (2006)), California (CAL. FAM.CODE § 3024 (2006)) and Maryland (MD.CODE ANN., FAM. LAW § 9–106 (2006)). States requiring 60 days' notice are: Arizona (ARIZ.REV.STAT. § 25–408 (2006)), Louisiana (LA.REV.STAT. ANN. § 9:355.4 (2006)), Missouri (MO.REV.STAT. § 452.377 (2006)), New Hampshire (N.H.REV.STAT. ANN. § 458:23–a (2006)), Tennessee (TENN.CODE ANN. § 36–6–108 (2006)), Utah (Utah Code Ann. § 30–3–37 (2006)), Washington (WASH. REV.CODE §§ 26.09.405, et seq. (2006)), West Virginia (W.VA.CODE § 48–9–403 (2006)) and Wisconsin (WIS. STAT. § 767.481 (2006)). The 2006 session of the Indiana legislature recently enacted a 90–day notice requirement (IND.CODE ANN. § 31–17–2.2–3 (2006)). "Reasonable" notice is required in Colorado (COLO.REV.STAT. ANN. § 14–10–129 (2006)) and Oregon (OR.REV.STAT. ANN. § 107.159 (2006)). Finally, the following states specifically address the relocation issue without implementing a notice requirement: Illinois (750 ILL. COMP. STAT. ANN. § 5/609 (2006)), Iowa (Iowa Code Ann. § 598.21D (2006)), Massachusetts (MASS. GEN. LAWS ch. 208, § 30 (2006)), Michigan (MICH. COMP. LAWS § 722.31 (2006)), Minnesota (MINN.STAT. § 518.195, Subd. 7 (2006)), Nevada (NEV.REV.STAT. § 125C.200 (2006)), New Jersey (N.J. STAT. ANN. § 9:2–2 (2006)) and North Dakota (N.D. CENT.CODE § 14–09–07 (2006)).

(b) The custodian appointed under the prior decree has placed the child with a de facto custodian.

KRS 403.340(2).[8] The companion statute, KRS 403.350, states, in pertinent part:

A party seeking ... modification of a custody decree shall submit together with his moving papers an affidavit setting forth facts supporting the requested ... modification and shall give notice, together with a copy of his affidavit, to other parties to the proceeding, who may file opposing affidavits.... The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.

KRS 403.350.

■ Taken together, these statutes establish certain clear prerequisites to the modification of a prior custody decree where the modification is sought earlier than two years after its entry. Specifically, the motion to modify "must be accompanied by at least two affidavits. [Citation omitted]. If the applicable requirement is not met, the circuit court is without authority to entertain the motion." *Petrey v. Cain*, 987 S.W.2d 786, 788 (Ky.1999). The filing of affidavits, therefore, is a jurisdictional requirement. *Crouch v. Crouch*, 201 S.W.3d 463, 465 (Ky.2006)("[T]rial court had no jurisdiction to modify the [permanent custody] order unless a motion to modify, along with a supporting affidavit, was filed in the case.").

However, before we find that the trial court had no jurisdiction to modify the Decree regarding custody, we will first examine the alternative means by which

Dale attempted to obtain custody modification.

As indicated by the comments of Dale's attorney at the October 21, 2005, hearing, Dale was aware of the requirement of KRS 403.340(2) that he show Gina's contemplated move would endanger the children. He sought to avoid both the jurisdictional and substantive requirements of the statute by filing a CR 60.02 motion, thereby obviating the need for affidavits or proof of endangerment. *Dull v. George*, 982 S.W.2d 227, 229 (Ky.App.1998)(When CR 60.02 relief is sought, requirements of KRS 403.340 do not apply), *cited with approval in Gullion v. Gullion*, 163 S.W.3d 888, 892 (Ky.2005).

■ Under proper circumstances, relief from a court's final decree of divorce, including an award of custody, is available by means of a CR 60.02 motion. *Crouch v. Crouch*, 201 S.W.3d 463, 465 fn. 2 (Ky. 2006). Had the trial court granted the extraordinary relief requested in Dale's CR 60.02 motion, the custody determination in the Decree would have been a nullity. The standard for determining custody then would not have been a modification under KRS 403.340, but an original determination of permanent custody under KRS 403.270. *Dull*, 982 S.W.2d at 229.

Unfortunately for Dale, the trial court denied his CR 60.02 motion. Dale did not appeal the trial court's denial and for good reason. Dale's deposition testimony made it clear that he knew Gina had developed ties to the Memphis area long before entry of the Decree. The fact that relocation was addressed in the Decree itself is further indication of a contemplated potential move whether to Memphis or some other destination in excess of 150 miles away.

8. Formerly KRS 403.340(1).

■ Dale's effort to revisit the custody issue should have ended with denial of the CR 60.02 motion, but the trial court continued toward modification and, in doing so, committed reversible error. In reviewing the record on appeal, including the depositions and videotapes of the many hearings, it is clear the trial court did not follow KRS 403.340 in reaching its decision to modify custody.

The trial court appears to have relied on Dale's counsel's representation[9] and did not examine the Decree. If the court had, the error in interpretation would have been immediately apparent. The provision in question permits review only of the "time-sharing arrangement"—not of the custody award. The error mistaking a provision authorizing modification of "time-sharing" for one authorizing modification of custody is a decisive, and in this case reversible, error.

> The difference is significant since a motion to modify custody made within two years after the date of the custody decree must be made on the basis of affidavits that the child's or children's present environment may endanger seriously his physical, mental, moral, or emotional health, or that the custodian under the prior decree has placed the child with a de facto custodian. KRS 403.340(2). Where the modification is one of visitation only, however, the court may grant an order modifying visitation rights if it would serve the best interests of the child. KRS 403.320(3).

*Crossfield v. Crossfield,* 155 S.W.3d 743, 745 (Ky.App.2005).

Just as KRS 403.320(3) authorizes the court to modify a visitation order whenever it would serve the best interests of the child, the parties' "time-sharing arrangement" can be similarly modified.[10] This is certainly true where the court anticipated such a need and identified in the decree events that would trigger reconsideration.

Clearly, Gina was mindful of the correct purpose and interpretation of the provision when she filed her "Motion to Modify Mid-Week Visitation." The trial court was apparently confused by the combination of Dale's response in the form of his own motion to modify custody and his attorney's representation that the Decree permitted such modification.

■ Our case law clearly holds that custody modification falls exclusively within the purview of KRS 403.340 and 403.350, and any other judicially-created "gateways" to custody modification are inapplicable. *Fenwick v. Fenwick,* 114 S.W.3d 767, 784 (Ky.2003). Consequently, even if the Decree had contained a provision setting up a standard for modification of permanent custody, it would be invalid unless it was in complete harmony with KRS 403.340. This, however, was not the case.

Because Dale's pursuit of custody modification occurred within two years of the award of custody in the Decree, Dale was required to file a motion pursuant to KRS 403.340(2) and attach to his motion a minimum of two affidavits with the proper

9. Having carefully reviewed these representations, they appear more cavalier than intentional or negligent. Matters of this import, however, should not be handled cavalierly either.

10. Strictly speaking, neither joint custodian derives his or her visitation rights from KRS 403.320. However, we agree with authority that the practice of renaming visitation "shared time," "time-sharing," "parenting time," or any other similar term, even as to joint custodians, will not affect the inherent nature of visitation nor the applicability of KRS 403.320 to modify it. 16 LOUISE E. GRAHAM & JAMES E. KELLER, Kentucky Practice, Domestic Relations Law § 22.1 (2nd ed.1997).

showing. He failed to do so and the trial court had no authority to modify custody.

Despite our statement in *Fowler v. Sowers*, 151 S.W.3d 357 (Ky.App.2004) that "*Fenwick* carries quite limited precedential weight[,]" *id.* at 359, the Supreme Court's holding in that case remains sound law under KRS 403.340(2) where the modification is sought within two (2) years of the original award of permanent custody. The following passage from Fenwick applies in this case:

> [W]hen a primary residential custodian gives notice of his or her intent to relocate with the parties' child, the burden is then upon any party objecting to file a custody modification motion within a reasonable time and after that, to satisfy the modification standard of KRS 403.340 in order to change the designation of primary residential custodian. If no motion is filed within a reasonable time, the primary residential custodian may relocate with the parties' child.

*Fenwick*, 114 S.W.3d at 786. Dale never pursued modification pursuant to KRS 403.340. In fact, he avoided it. Custody should not have been modified and Gina should have been permitted to relocate with her children.

Furthermore, we have thoroughly examined the record and see no substantive basis for preventing Gina from relocating with her children to the Memphis area.

> Although the "interaction and interrelationship" of the children with their father and other persons where they now live is a relevant factor in determining the likelihood of harm by the proposed relocation, [footnote omitted] the mere fact that relocation may affect the frequency of [Dale's] time-sharing with his children and the children's contact with other persons does not, standing alone, support a finding that the proposed relo-

cation creates a likelihood of serious harm to the children.

*Id.* at 788.

For the foregoing reasons, the order of the Rockcastle Circuit Court modifying the joint custody award by designating Robert Dale Robinson as "primary [residential] custodian" is REVERSED and the custody order pursuant to which Eugenia Sue Wynn Robinson is to have primary residential custody of the children is ordered to be reinstated. The case is remanded for an order consistent with this opinion.

ALL CONCUR.