**Gary Lee CORNS, Appellant,**

v.

**Taffy Lynn CORNS (Now Ratcliff), Appellee.**

No. 2010–CA–001911–ME.

Court of Appeals of Kentucky.

June 17, 2011.

Glennis R. Harris, Jr., Flemingsburg, KY, for Appellant.

Luke Bentley III, Vanceburg, KY, for Appellee.

Before NICKELL and THOMPSON, Judges; ISAAC,[1] Senior Judge.

## OPINION

NICKELL, Judge:

Gary Lee Corns appeals from an order of the Lewis Circuit Court, Family Court Division, modifying an award of joint custody of his minor daughter to a grant of sole custody to his former wife, Taffy Lynn Corns (now Ratcliff). Having reviewed the briefs, the record, and the law, we reverse for lack of subject matter jurisdiction and a denial of due process and remand for further proceedings consistent with this Opinion.

## FACTS

We begin by reciting the convoluted facts of this appeal. Gary and Taffy were married in 1995. A daughter, Allison, was born of their union in February of 2003. The couple separated on August 11, 2006,

and Taffy petitioned the Lewis Circuit Court to dissolve the marriage. The parties entered into a separation agreement on August 30, 2007, in which they agreed to share joint legal custody and parenting of Allison. No primary residential custodian was designated. That same day, the trial court entered findings of fact, conclusions of law and decree of dissolution of marriage in which it fully adopted and incorporated the separation agreement.

When it came time to enroll Allison in school, Gary and Taffy wanted her to attend different schools. To resolve the impasse, in January of 2008, Taffy asked the court to decide what was in the child's best interest. The trial court noted on its docket sheet for April 17, 2008, that it was treating Taffy's motion as a request to modify custody rather than to change Allison's school enrollment and gave Taffy an opportunity to file an amended motion which she did, supported by two affidavits, pursuant to KRS 403.350. The trial court then issued a four-page order on August 7, 2008, denying Taffy's request to allow Allison to attend school in Carter County rather than in Lewis County where she had attended preschool. The order stated, Taffy's:

> voluntary relocation to another county should not be used to void [Gary's] time with the child, nor has there been any evidence presented to the Court that the change to Carter County would amount to the best interest of the child.

Other than referencing the "best interest" standard typically applied to custody determinations, the court never specifically ruled on Taffy's motion to modify custody and designate a primary residential custodian. Taffy never requested a more spe-

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky

Constitution and Kentucky Revised Statutes (KRS) 21.580.

cific ruling on her motion for custody modification or more particular findings, thereby evidencing her acquiescence in the trial court's determination regarding the matters raised.

Sometime later, an issue arose about whether Allison met the surgical criteria for a tonsillectomy. Taffy believed she did; Gary did not. At the motion hour convened on September 19, 2009, the trial court authorized Taffy to schedule the procedure, but allowed Gary to obtain a second opinion and stated that a hearing could be scheduled if the independent medical exam produced a contrary medical indication. After examining the child on November 21, 2009, Dr. Paul Conrad concluded a tonsillectomy was unnecessary. Thus, on July 29, 2010, Gary filed a *pro se* motion stating:

Gary Corns, Petitioner, ask (sic) the Court to have a hearing of (sic) Taffy Corns Ratcliff's lying to have Allison Corn's tonsil (sic) removed and shared parenting decision making. Due to the independent study by my doctor being different than hers. Enclosed is the original court document stating that if an independent study differs, have a hearing.

The motion was noticed to be heard on August 5, 2010. Taffy filed a verified response wherein she alleged Gary's motion did not state a claim for which relief could be granted, but agreed with the "essence" of his motion which she characterized as alleging that she and Gary could no longer share joint custody of their daughter. Taffy's response stated,

While [Gary's] Motion does not specifically meet the statutory requirements to consider a modification of custody, [Taffy] affirmatively states that pursuant to KRS 403.340 and other applicable law that significant and continuing changes in circumstances have occurred since the entry of the Decree that modification is

necessary to serve the best interests of the child. The parties were originally designated as joint custodians, however, it should be readily apparent from the various pleadings filed by [Gary] that joint decision making in this case is impossible.

In requesting a hearing "on the issue of modification of custody," Taffy stated:

[Gary] has become so irrational and incoherent in the dealings with the minor child that it is in her best interests that custody be modified to designate [Taffy] as her sole custodian.

A copy of the response was mailed to Gary on August 3, 2010. On August 4, 2010, Taffy moved the trial court to hold Gary in contempt for failing to pay his half of Allison's health insurance premiums and uncovered health care expenses, and to schedule a show cause hearing on the matter.

The parties appeared at motion hour on August 5, 2010. Gary appeared without counsel, although Thomas M. Bertram was listed as his attorney on the docket sheet. In calling the case, the trial court stated the matter to be discussed was Gary's motion "for basically a change in custody." Gary neither objected to nor corrected the trial court's characterization of his motion as anything more than a hearing on the need for a tonsillectomy. Taffy's attorney again acknowledged that Gary's motion was statutorily deficient for custody modification. Even so, he asserted that a custody hearing was needed and that he intended Taffy's response to fill in any gaps left by Gary's motion and to satisfy the statute. With Gary's agreement, a hearing was set for September 9, 2010, at 1:00 p.m. to consider Gary's motion, now characterized as a request for custody modification by the trial court, as well as Taffy's motion to hold Gary in contempt.

The trial court convened the scheduled hearing on September 9, 2010, at 1:19 p.m. Gary appeared alone. Taffy appeared with counsel. The trial court again stated the purpose of the hearing as:

Court: Mr. Corn's motion for a change of custody, which I believe, Mr. Bentley, you have joined in with your response.

Taffy's Attorney: That's correct.

Court: And also there's some motions for contempt that you filed against Mr. Corns.

Taffy's attorney immediately withdrew the motion to hold Gary in contempt for non-payment of health insurance premiums and expenses as he was now current in his obligation.

Gary's *prior* attorney, Bertram, addressed the trial court stating he did not represent Gary on this matter, but that Gary's mother had called him the night before stating a custody modification hearing was to occur at 9:30 the next morning. Bertram stated he had told Gary he should have legal representation and believed Gary would ask the trial court for a continuance to secure legal counsel. Bertram stated he did not know the issues to be covered in the hearing and could not say he would represent Gary if he knew the issues. Bertram was then excused by the trial court and left the courtroom. Thereafter, Gary, representing himself, asked the trial court for time to get an attorney because he had believed the hearing was to be limited to the tonsillectomy issue and that he had not realized Taffy was attempting to modify the custody arrangement.

Taffy's attorney, Luke Bentley III, addressed the trial court stating Gary had filed for an emergency protective order on the tonsil issue, which the trial court had dismissed, and then Gary filed his current motion. Bentley reminded the trial court that it had twice warned Gary about the dangers of self-representation and that if he chose to represent himself he would be held to the same standard as an attorney. Bentley asked that if the trial court was inclined to continue the hearing, that it allow Taffy to take testimony from the three professionals she had subpoenaed.

The trial court asked Gary what he had done during the thirty-five days since the scheduling of the hearing. Gary responded that he thought the only issue to be heard was the need for a tonsillectomy. The trial court recounted events from the record and then overruled Gary's motion for a continuance, stating Gary had taken no action for thirty-five days, there was a tight docket, and the trial court had set aside the afternoon for the hearing. The hearing then commenced.

Gary offered testimony from his mother, Lula Corns, who said she did not think Allison's life was endangered by being in Gary's care and confirmed she had helped Gary pay for Allison's health insurance. He next presented testimony from Nancy Hildebrand, a retired school bus driver, who described Allison as content and happy. Gary also introduced a medical record from Dr. Conrad which opined that Allison's tonsils did not require removal.

At the conclusion of Gary's proof, the trial court confirmed with Gary that his sole objective in moving for a hearing was to obtain an order preventing the tonsillectomy. Taffy's attorney agreed. Gary also asserted he was not trying to take Allison from Taffy because there was no proof she had placed Allison in a life or death situation. Thereafter, the trial court sustained Taffy's motion for a directed verdict on the tonsillectomy issue due to Gary's failure to meet his burden of proof.

Taffy's attorney thereupon stated that even though Gary's motion and proof were

deficient in all respects, Taffy was also seeking a change in custody and he doubted Gary had elicited sufficient evidence in support of his motion for custody modification to allow the trial court to rule in Taffy's favor. The following exchange then occurred:

> Court: Now, the other issue, is that you've asked for a change of custody.
>
> Taffy's Attorney: Yes.
>
> Court: And, I don't know, are you going to proceed on that?
>
> Taffy's Attorney: *I* would like to, yes.
>
> Court: Call your first witness.

Taffy called Gary as her first witness. He confirmed that he and Taffy cannot agree on what is best for their daughter when it comes to matters of life and death. He admitted filing a grievance against Dr. Sanjiv Gupta, one of Allison's treating physicians, for allegedly falsifying the child's medical records and recommending she undergo a tonsillectomy. He also admitted calling the FBI and inquiring about fraud.

Taffy's second witness was Paul Cales, a welfare fraud investigator in the Cabinet for Health and Family Services, Office of Inspector General. He discussed fraud with Gary. Gary was concerned that Taffy had applied for a medical card while he was paying health insurance premiums for Allison. Cales found no evidence of fraud and undertook no further investigation or action against Taffy.

Taffy's third witness was Paul Moore, a supervisor in the Cabinet for Family and Health Services, Supervised Intake. He stated eleven reports had been received about Taffy's family, but nothing improper had been substantiated.

Rachel Lashbrooke, Allison's first grade teacher at Tollesboro Elementary School, was Taffy's fourth witness. She described Allison as a well-behaved, excellent student. One of the tasks she teaches her students is to put their name on their papers. The first time they fail to do this, students receive a warning; the second time, they lose five minutes of recess. The first time Allison failed to put her name on her paper she received the customary warning; the second time she received a five-minute penalty. Gary became "very upset" about the penalty and demanded it be removed from her permanent record. Lashbrooke stated the "penalty" never appeared on Allison's permanent record and the punishment had already been imposed when Gary became upset and made his demand.

Finally, Taffy testified in her own behalf. She stated she has worked for the Cabinet for Families and Children for five years. In recent years, she and Gary have been unable to agree on anything regarding their daughter. She also confirmed that Allison was diagnosed with throat infections fourteen times between 2008 and 2010.

On September 14, 2010, the trial court entered an order stating in relevant part:

> [Taffy] testified that the parties cannot work together to make any type of decision. At first there was shared parenting, but for the past couple of years they cannot agree on anything. She took the child to several different physicians who all believed that the child needed a tonsillectomy. [Gary] would not agree to the tonsillectomy. [Taffy] wants to be able to make the major decisions in regards to the child and wants to change the child's school to Carter County where she and the child now live with her current husband. [Taffy] has since had a child with her new husband and is currently expecting another child.
>
> It is obvious that both parents love their child. [Gary] has become so ob-

sessed with his child that he cannot make rational and informed decisions when it comes to the well being of the child. The Court is convinced that in [Gary's] mind he is doing what is best for the child, but in actuality, he is not.

When parties are unable to agree as to the major decisions in regards to a child's life, then the Court has no option but to change the custody arrangement in regards to the parents. The Court is guided by the long line of cases which specifically state that if the parties are unable to agree on those major decisions then joint custody is not appropriate. In this situation the failure to agree by [Gary] to the tonsillectomy could have been medically harmful to his child.

IT IS THEREFORE THE ORDER OF THIS COURT that [Taffy] be granted custody of the parties' child with the authority and legal right to make all decisions that come with that title, including medical and educational decisions. [Gary] shall continue to have visitation with his child three weekends per month. The parties shall meet half-way to transfer the child for visitation purposes. The times of visitation shall be from 6:00 p.m. on Friday to 6:00 p.m. on Sunday on those weekends that [Gary] is to receive the child.

Following the trial court's entry of the aforementioned order on September 14, 2010, Hon. Glennis R. Harris, Jr., filed a motion to alter, amend or vacate the order on Gary's behalf. The motion to alter, amend or vacate alleged that opposing counsel may have mentioned a proposed custody modification during the motion hour on August 5, 2010, but Gary never received a written motion or supporting affidavit setting a hearing on Taffy's motion for custody modification and that he believed the September 9, 2010, hearing was to be solely about the need for a tonsillectomy. The motion to alter, amend or vacate further claimed that the doctors who had recommended the tonsillectomy to Taffy did so based upon false information she had supplied, and that Dr. Conrad's medical opinion, which Gary had provided to the trial court, indicated surgery was unnecessary. The motion to alter, amend or vacate sought restoration of joint custody as established in the separation agreement executed by the parties on August 30, 2007. Alternatively, the motion to alter, amend or vacate sought a finding that Taffy's actions could have medically harmed Allison and an award of sole decision-making authority to Gary and reasonable visitation with Allison for Taffy. A note from Dr. Conrad submitted in support of the motion to alter, amend or vacate recommended a "wait and see" approach to scheduling the tonsillectomy since the history related by Gary and by Allison's medical records did not indicate she satisfied the surgical criteria. The motion to alter, amend or vacate was also supported by an affidavit from Gary in which he stated he did not oppose Allison undergoing a tonsillectomy if it was medically necessary, but that the medical opinion received from Dr. Conrad indicated surgery was currently unnecessary.

According to the court docket, the motion to alter, amend or vacate was denied on October 5, 2010. Gary then filed a notice of appeal from the orders entered on September 9, 2010, (denying continuance of the custody modification hearing) and on September 14, 2010, (awarding sole custody to Taffy). This appeal followed.

## LEGAL ANALYSIS

■ Without offering legal support for his contention, Gary argues the trial court erred in denying his request for a continuance to secure legal counsel because there was no showing of an emergency need for

the hearing to occur on September 9, 2010, and because holding the hearing was a denial of due process. "We have written many times that a trial court has broad discretion in granting or overruling a motion for a continuance, and that this court will not interfere in the exercise of that discretion unless it is clearly abused." *Riordan v. Riordan,* 252 S.W.2d 901, 902 (Ky.1952) (citing *Farris v. Evans,* 289 Ky. 418, 158 S.W.2d 941, 943 (1942)). As the trial court stated on the record, Gary had thirty-five days to secure counsel and did nothing.

Gary's claim on the day of the hearing that he did not realize custody modification was to be explored, and that he thought the hearing was restricted solely to the medical need for a tonsillectomy, is not borne out by the record. First, Gary was twice warned of the perils of self-representation. Second, he participated in the motion hour on August 5, 2010, where custody modification and the need for a hearing were discussed. When the trial court indicated that the September 9, 2010, hearing was being scheduled to address Gary's motion for custody modification, Gary neither objected to nor sought to correct the trial court's characterization. Third, without requesting clarification of what would occur at the proposed hearing, voicing any objection, requesting more time to secure counsel, or stating he lacked funds to hire an attorney, Gary agreed to the trial court's scheduling of the September 9, 2010, hearing date for the purpose of hearing his motion for custody modification. Fourth, for thirty-five days, Gary took no action. Fifth, the night before the hearing, Gary's *mother,* recognizing the seriousness of the custody issue confronting her son, contacted his former attorney and told him a custody hearing was to occur the next day, thereby resulting in counsel's brief appearance during the proceeding. In light of these facts, we must conclude Gary knew custody modification was to be addressed at the hearing and that he simply chose not to seek counsel or unreasonably neglected to do so. In either event, Gary's claim of lack of notice and surprise at the hearing seems disingenuous. Therefore, under *Riordan* and *Farris,* we have no reason to hold the trial court abused its discretion in going forward with the scheduled hearing on *Gary's* motion.

■ However, a more fundamental and troubling issue is Gary's allegation that his due process right to a fair hearing was denied because *Taffy's* motion to modify custody, contained in her verified response to his motion for a hearing on the need for a tonsillectomy, was statutorily deficient. Gary asserts Taffy's motion was statutorily deficient because it did not allege "adequate cause"[2] to justify a custody modification; it was not supported by an affidavit;[3] and he did not receive ad-

---

**2.** "Adequate cause, in this context, requires more than *prima facie* allegations which might permit inferences sufficient to establish grounds for a change in custody." *West v. West,* 664 S.W.2d 948, 949 (Ky.App.1984) (citing *Roorder v. Roorder,* 25 Wash.App. 849, 611 P.2d 794, 796 (1980)).

**3.** A motion to modify a custody decree filed more than two years after its entry must be supported by one affidavit. KRS 403.350. A motion to modify a custody decree filed within two years of its entry must be supported by two affidavits and allege "[t]he child's present

environment may endanger seriously his physical, mental, moral, or emotional health; or [t]he custodian appointed under the prior decree has placed the child with a *de facto* custodian." KRS 403.340; *Robinson v. Robinson,* 211 S.W.3d 63, 68–69 (Ky.App.2006). Here, the custody agreement was entered by the trial court on August 30, 2007. Gary's "motion" was filed on July 29, 2010, well outside the two-year window, and therefore required the support of one affidavit. However, other than Taffy's verified response, no affidavit was filed.

vance notice[4] of the hearing. Taffy argues the verified response she filed was the equivalent of an affidavit and sufficiently alleged the parties could not agree about their daughter's care to justify a change in custody. She further alleges Gary was not "blindsided" by the discussion of custody modification during the hearing since *his* motion sought a hearing on "shared parenting decision making." In reviewing this issue we have discerned a number of errors, the combination of which requires reversal.

First, we note that the motion Taffy initially filed in January of 2008, asking the court to determine where Allison should be enrolled in school, and then amended at the trial court's invitation on April 25, 2008, to request that custody be modified and a primary residential custodian be designated, has no bearing on this issue. The April 25, 2008, custody modification motion filed by Taffy was obliquely addressed by the trial court in its order entered August 7, 2008, which denied Taffy's request that Allison be allowed to attend school in Carter County rather than in her native Lewis County. If Taffy was dissatisfied with the trial court's ruling, or any lack thereof, it was incumbent upon her to alert the trial court to the need for more definite findings or to any remaining matters requiring further determination. She did not; and therefore, her April 25, 2008, motion for custody modification was not before the trial court during the September 9, 2010, hearing.

Second, *Gary* never filed a motion to modify custody. The *pro se* motion he filed on July 29, 2010, asked for a hearing on "Taffy Corns Ratcliff's lying to have Allison Corn's tonsil removed and shared parenting decision making." This *pro se* motion was clearly filed by Gary

solely in regard to the issue of his daughter's need for a tonsillectomy, particularly since Gary referenced the trial court's prior ruling which had indicated that he could "have a hearing" if he obtained an independent medical opinion contradicting the need for surgery. More importantly, Gary's motion was not verified. The lack of an affidavit or verification is fatal to consideration of his motion as a request for custody modification. *Coffman v. Rankin,* 260 S.W.3d 767, 769 (Ky.2008). Without the statutorily required affidavit or verification, the trial court lacked subject matter jurisdiction to entertain a motion for custody modification. *Petrey v. Cain,* 987 S.W.2d 786, 788 (Ky.1999) (circuit court acquires subject matter jurisdiction over custody modification only if motion is accompanied by statutorily required affidavit or affidavits).

> It is well-established that a judgment entered by a court without subject matter jurisdiction is void. In addition, since subject matter jurisdiction concerns the very nature and origins of a court's power to do anything at all, it cannot be born of waiver, consent or estoppel, and may be raised at any time.

*Hisle v. Lexington–Fayette Urban County Government,* 258 S.W.3d 422, 430–31 (Ky. App.2008).

While neither party has specifically argued the lack of subject matter jurisdiction, it is clear that Taffy's attempt to cure and *join* Gary's motion, or consent to it, was ineffectual because Gary's motion was statutorily inadequate to raise the issue of custody modification. The trial court simply mischaracterized Gary's inartfully drafted motion for a hearing on the need for a tonsillectomy and "shared parenting decision making" as a motion on and re-

**4.** *Murphy v. Murphy,* 272 S.W.3d 864, 868 (Ky.App.2008) (error to hold custody modification hearing without providing proper notice to parent).

quest for a hearing on a change in custody. Gary's motion for a hearing on Allison's need for a tonsillectomy, even though including the phrase "shared parenting decision making," was wholly inadequate to serve as a custody modification motion because it did not allege sufficient facts and was not supported by a statutorily required affidavit, and thus could not convey subject matter jurisdiction to the trial court. *Petrey.*

Third, Taffy's verified response had originally sought merely to rectify and *join* Gary's motion, which Gary never intended and which never statutorily qualified as a custody modification motion. In responding to Gary's motion, and the trial court's erroneous characterization of it as a custody modification motion, Taffy could have: 1) pointed out that Gary had merely moved for a hearing on the tonsillectomy issue and either agreed with or opposed the motion for a hearing; 2) responded that any purported custody modification motion by Gary lacked the statutorily required affidavit and thereby precluded the trial court from exercising subject matter jurisdiction; or 3) filed her own separate motion for a change in custody along with an affidavit and notice for a hearing, Instead, Taffy's verified response simply agreed with the "essence" of Gary's motion, attempted to cure its statutory shortcomings through her own verified allegations, and sought "a hearing on the issue of modification of custody, and for any and all other relief to which she may appear entitled." A notice provision was not included in the verified response.

Taffy argues that by curing and *joining* Gary's motion, mischaracterized as it was by the trial court as a motion for custody modification, her verified response conferred subject matter jurisdiction upon the trial court. We disagree. For two reasons, Taffy's response, verified though it was, could not vicariously cure the statutory deficiencies related to Gary's purported custody modification motion and thereby provide the trial court with subject matter jurisdiction to address the issue. First, Taffy was attempting to *join* a custody modification motion that never existed. Gary never intended to file anything other than a motion for a hearing to determine the medical necessity of Allison's tonsillectomy. Though mischaracterized by the trial court, Gary's motion never qualified as a custody modification motion because it failed to meet the foundational requirements of KRS 403.350. Clearly, a party cannot cure or join a pleading that was never conceived or in existence. Second, even if Gary *had* intended to move for custody modification, Taffy's verified response would, at most, represent an "opposing affidavit" under KRS 403.350, and would not satisfy the strict statutory requirements necessary for Gary's motion to have conveyed subject matter jurisdiction to the trial court. *Petrey* and *Hisle.* Thus, Taffy's argument must fail.

Fourth, even if we were to deem Taffy's verified response as a separate motion and statutorily sufficient to confer subject matter jurisdiction upon the trial court to hear the custody modification issue, no hearing was ever specifically scheduled on *Taffy's* motion to modify custody. Her verified response included no notice provision regarding the August 5, 2010, motion hour, and the trial court did not address any custody modification motion by Taffy in scheduling matters to be addressed at the September 9, 2010, hearing. Therefore, no notice was ever technically provided to Gary to prepare a defense to any motion for custody modification by Taffy against him to be heard on September 9, 2010. The absence of notice requires reversal. *K.F. v. Commonwealth,* 274 S.W.3d 457, 458 (Ky.App.2008).

At the motion hour convened on August 5, 2010, the trial court specifically identified the need to schedule a hearing on *Gary's* motion. Thus, the only matters specifically identified by the trial court to be heard at the September 9, 2010, hearing concerned Gary's motion regarding the medical necessity for Allison's tonsillectomy, which the trial court erroneously transformed into a hearing on custody modification, and Taffy's motion to hold Gary in contempt for failing to pay his portion of Allison's health insurance premiums. Even though Taffy's verified response had been filed on August 3, 2010, her attorney did not advise the trial court that she had filed a cross-motion for custody modification that should be heard at the same time. Thus, *Taffy's* request for sole custody of Allison, contained in her verified response, was not scheduled to be heard on September 9, 2010, and Gary received no notice to prepare a defense to *her* allegations for presentation on that date.

When the case was called for a hearing on September 9, 2010, the trial court announced the issue to be considered was *Gary's* motion for a change in custody. Taffy's attorney withdrew *her* motion to hold Gary in contempt because his payment of half of Allison's insurance premiums had been brought current. Upon completion of proof relative to Gary's motion, the trial court ultimately and correctly discerned that the sole matter about which Gary had sought its ruling was in regard to the medical necessity of Allison's tonsillectomy. Even Taffy's counsel admitted this was the purpose of Gary's motion. Having finally perceived Gary's true intention in moving for the hearing, the trial court proceeded to grant a directed verdict in favor of Taffy and ordered that the tonsillectomy proceed.

At this point in the hearing, having addressed all matters specifically scheduled for determination, the trial court should have concluded the hearing. The trial court erred when it proceeded to hear *Taffy's* motion to change custody because her custody modification motion had not been scheduled to be heard and Gary had received no notice of such a hearing. KRS 403.350 requires that once a trial court finds adequate cause to exist for a hearing, "it shall set a date for hearing...." Here, no such hearing was ever scheduled by the trial court relative to any motion for custody modification filed by *Taffy,* if her verified response met the statutory requirements, and it was error for the trial court to proceed with a hearing concerning that matter on September 9, 2010. "Due process requires, at the minimum, that each party be given a meaningful opportunity to be heard." *Lynch v. Lynch,* 737 S.W.2d 184, 186 (Ky.App.1987). Setting Gary's motion, which the trial court erroneously treated as a motion for a change in custody, for a hearing did not satisfy the due process requirement that Gary receive notice that the court was hearing Taffy's request for a change in custody. Thus, it was error to hear Taffy's motion, if any there was, without first scheduling the matter for a hearing.

## CONCLUSION

For the foregoing reasons, the orders of the Lewis Circuit Court, Family Court Division, are reversed and the matter is remanded for further proceedings consistent with this Opinion.

THOMPSON, Judge, concurs.

ISAAC, Senior Judge, concurs in part and dissents in part.

ISAAC, Senior Judge, concurring in part and dissenting in part:

I concur with the majority in its opinion that the trial court did not abuse its discre-

tion in denying appellant's motion for a continuance. However, I respectfully dissent in its reversal of the trial court on grounds that the court did not have subject matter jurisdiction due to statutory deficiencies of the pleadings. Although this was not a textbook example of how a custody modification should proceed, the pleadings nonetheless met the requirements necessary for the trial court to proceed to the merits. Gary first asked the court to address the custodial arrangement by his inartfully drafted *pro se* motion of July, 2010, which stated as follows:

> Gary Corns, Petitioner, ask (sic) the Court to have a hearing of Taffy Corns Ratcliff's lying to have Allison Corn's tonsil removed *and shared parenting decision making.* (emphasis added).

Taffy then filed a verified response wherein she alleged that Gary's motion was defective, but agreed with the essence of his motion that she and Gary could no longer share joint custody of their daughter. Her response set out that it was apparent from the various litigation in the case that joint decision making was impossible. She went on to also request a hearing on the issue of modification of custody. At the motion hour on August 5, 2010, the trial court stated that the matter to be discussed was Gary's motion "for basically a change in custody." Gary did not object to the trial court's characterization of his pleading and Taffy's attorney agreed that a custody hearing was needed and that he intended for Taffy's response to fill in any gaps left by Gary's motion and to satisfy the statute. The trial court then set a hearing on the modification issue for September 9, 2010, which was held despite the fact that Gary's previous attorney appeared that day (after being contacted by Gary's mother the evening before) and asked for a continuance.

There is no question that both parties desired the trial court to address and change the existing joint custody order. Although Gary's motion was statutorily deficient, Taffy's verified response included her motion to change joint custody. There is no magic in the title given a document. The failure of Taffy's attorney to designate the response as a "Response and Motion" does not change the nature of the pleading. No notice was required in Taffy's motion since Gary's motion already had a date to be heard. On that date, with both sides present, the trial court continued the case to be heard on September 9, 2010. There is no question that both parties were before the court and personally told that the hearing on custody modification was to take place on September 9th. There was a discussion at the August hearing that the September hearing would take up the issue of *both* parties' motions for modification. Notice is not an issue in this case.

As to whether the verification of Taffy's pleading was sufficient to act as an affidavit, that question is answered by the *Coffman* case cited by the majority, in which the Supreme Court states, "while filing a separate affidavit is the better practice, Appellant's verified petition in this instance technically meets the requirements of an affidavit." (FN 6, page 769).

I would deem Taffy's verified pleading, styled, "Response," but in effect a "Response and Motion," to be statutorily sufficient to confer subject matter jurisdiction upon the trial court. I would affirm the trial court in all respects.